FLOYD, District Judge:
Darick D. Walker brings this appeal asserting that the district court erred by failing to find cause and prejudice sufficient to overcome the procedural default of his claim under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as it relates to the evidence withheld by the Commonwealth regarding prosecution witness Bianca Taylor (Bianca Brady claim).
We agree with Walker and, for the reasons set forth below, hold that Walker has established the cause and prejudice necessary to overcome the procedural default of his Brady claim. Accordingly, we vacate the judgment of the district court and remand for an evidentiary hearing on the merits of his Bianca Brady claim.
I.
Catherine Taylor and her children, Bianca, Monique, and Sidney, lived in University Terrace Apartments with Stanley Beale, the children’s father. (J.A. at 35.) On the evening of November 22, 1996, Stanley Beale was in the kitchen of the Beale apartment when Catherine Taylor, who was in the bedroom with the three children, heard a “boom like noise” in the living room. (J.A. at 36.) According to the testimony at trial, Catherine, Bianca, and Monique left the bedroom and entered the living room. (J.A. at 37.) Catherine and Bianca testified at trial that they saw a man lack in the front door and enter the apartment with a gun, (J.A. at 26, 37.), and that Beale, who was standing in the doorway of the kitchen, answered the intruder by stating, “I don’t know you.” (J.A. at 25, 37.)
On the night of the incident, Catherine provided police with a detailed description of the height, build, and clothing of the intruder. (J.A. at 489, 844.) Nevertheless, she was unable to identify Walker as the intruder in a photo lineup. (J.A. at 40.) Bianca, on the other hand, attested at trial that she saw Walker shoot her father and recognized him as someone she knew named “Todd.” (J.A. at 27-29.) Bianca identified Walker during a photo lineup and again at trial as “Todd.” (J.A. at 29-30.)
Tameria Patterson, a fourteen-year-old girl at the time of the trial, was visiting the home of Karen Randolph in University Terrace Apartments (Randolph apartment) on the night of the murder. (J.A. at 50-51.) At trial, Tameria stated that she saw a man she knew as “Todd” enter the Randolph apartment and say “I shot him.” (J.A. at 52.) During a photo lineup and later at trial, Tameria identified Walker as the person who entered the Randolph apartment. Id.
On August 31, 1998, through September 1,1998, Walker was tried and convicted by a jury in the Circuit Court for the City of Richmond on charges of capital murder for *171 the deaths of Stanley Beale and Clarence Threat, on two counts of burglary, and on four counts of using a firearm in the commission of a murder and burglary. (J.A. at 182-84.) Walker received a sentence of life imprisonment for each of the two burglary convictions and a total of eighteen years imprisonment for the firearm convictions. (J.A. at 333C.) In a separate sentencing proceeding, the jury sentenced Walker to death for his capital murder convictions. (J.A. at 333C.)
On June 11, 1999, the Virginia Supreme Court affirmed Walker’s conviction and death sentence. Walker v. Commonwealth, 258 Va. 54, 515 S.E.2d 565, 577 (1999). The United States Supreme Court subsequently denied Walker’s petition for writ of certiorari. Walker v. Virginia, 528 U.S. 1125, 120 S.Ct. 955, 145 L.Ed.2d 829 (2000) .
The Supreme Court of Virginia dismissed Walker’s habeas corpus petition on March 23, 2001. Walker v. True, No. 615, slip op. at 12 (Va. Mar. 23, 2001); (J.A. at 359.) The state trial court then set Walker’s execution date for August 7, 2001. The federal district court stayed Walker’s execution on July 31, 2001, and granted his motion for appointment of counsel.
On February 1, 2002, Walker filed his federal petition for a writ of habeas corpus in accordance with 28 U.S.C. § 2254, along with a discovery motion seeking the police records related to the Beale murder. (J.A. at 388.) On July 26, 2002, the district court dismissed Walker’s petition and denied all outstanding motions. Walker v. True, No. 01-1196-A, slip op. at 55 (E.D.Va. July 26, 2002); (J.A. at 942.) The district court denied Walker’s motion for reconsideration on September 4, 2002, Walker v. True, No. 01-1196-A, slip op. at 1 (E.D.Va. Sept. 4, 2002), and Walker noted his appeal on October 4, 2002. (J.A. at 1001.)
In an unpublished opinion dated May 6, 2003, this court granted Walker’s Certificate of Appealability on, inter alia, his claim that the Commonwealth failed to disclose certain evidence in violation of Brady, 373 U.S. 83, 83 S.Ct. 1194. Walker v. True, 67 Fed.Appx. 758, 762 (4th Cir.2003). The panel then held that Walker failed to establish sufficient cause to undermine the state court’s finding that he knew of the factual basis underlying his Bianca Brady claim at the time of trial and on direct appeal. Id. at 767.
Walker subsequently petitioned the United States Supreme Court for a writ of certiorari on several bases, including an argument that this court erroneously decided his Brady claim. The Supreme Court granted certiorari, vacated, and remanded for reconsideration of his ineffective assistance of counsel claim, but not for reconsideration of the Brady claim. Walker v. True, 540 U.S. 1013, 124 S.Ct. 567, 157 L.Ed.2d 426 (2003). The district court and this court reconsidered the ineffective assistance claim and again dismissed it. Walker v. True, 401 F.3d 574 (4th Cir.2005).
Walker once more petitioned the United States Supreme Court for certiorari, rearguing, inter alia, that this court erred in deciding his Brady claim in 2003. The Supreme Court granted certiorari and remanded the case to this court for reconsideration of the Brady claim in light of the Court’s intervening decision in Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004).
II.
As a general rule, we are
precluded from reviewing the merits of a claim that was procedurally defaulted under an “independent and adequate” state procedural rule, “unless the [peti *172 tioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.”
Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (citation omitted). Viewing the facts of the case at bar through the lens of Banks, we will now consider whether Walker has shown the requisite cause and prejudice to overcome the procedural default of his Brady claim.
III.
A.
We first consider the cause factor as illustrated by the facts in Banks. In Banks, the petitioner was convicted of capital murder and sentenced to death. 540 U.S. at 674, 124 S.Ct. 1256. Prior to trial, the State advised Banks’ attorney that it would provide all discovery to which Banks was entitled. Id. Despite this assertion, however, the State withheld evidence that would have allowed Banks to discredit two essential prosecution witnesses. Id. at 675, 124 S.Ct. 1256.
Through the course of discovery and an evidentiary hearing authorized by the district court in Banks’ federal habeas proceeding, the evidence revealed that one of the State’s key witnesses was a paid police informant. Id. Furthermore, a pretrial transcript revealed that the “other witness’ trial testimony had been intensively coached by prosecutors and law enforcement officers.” Id.
The district court granted Banks’ petition with respect to his death sentence, but the court of appeals reversed, finding that Banks had documented his claims of prosecutorial misconduct too late and in the wrong forum. Id. The Supreme Court reversed the lower court’s decision and held that Banks had demonstrated the requisite cause for his failure to raise a Brady claim in state proceedings. Id. The court reached its conclusion by applying the tripartite test announced in Strickler v. Greene, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999):
(a) prosecution withheld exculpatory evidence; (b) petitioner reasonably relied on the prosecution’s open file policy as fulfilling the prosecution’s duty to disclose such evidence; and (c) the [State] confirmed petitioner’s reliance on the open file policy during state habeas proceedings that petitioner had already received everything known to the government.
Banks, 540 U.S. at 692-93, 124 S.Ct. 1256. We now apply the Strickler factors to the facts of the instant case.
Walker argues that the first Strickler factor, that the prosecution failed to disclose Brady material, is met in the instant case. We agree. As detailed below, the Commonwealth knew of, but failed to disclose, police reports that contain evidence which challenges the credibility of Bianca Taylor’s alleged eyewitness testimony.
Specifically, in a signed affidavit, Walker’s habeas counsel attested that several Freedom of Information Act (FOIA) requests were sent to the Richmond Police Department, the Office of the Attorney General, the Office of the Commonwealth Attorney, and the Virginia Department of Corrections seeking to obtain any Brady material in the Stanley Beale and Clarence Threat files. (J.A. at 491.) Two days before Walker’s state habeas petition was due, Walker’s counsel received the Beale police reports in response to his requests. (J.A. at 494.) Walker relies on the following of those reports in support of his Bianca Brady claim:
1. In a Supplementary Offense Report dated November 22, 1996, Officer *173 David Ernst summarized his initial investigation of the murder of Stanley Beale and stated that Bianca Taylor “could provide no further information” other than describing shots being fired. (J.A. at 537.)
2. In the handwritten notes of Detective Curtis Mullins, dated November 22, 1996, Mullins states that “13 yr. old heard voice and stated that it sounded like Todd and she was positive that it was Todd[ ].” (J.A. at 485, 859.) This note was based on a brief summary of information verbally provided to Mullins by Hickman and Ernst from the night of the murder. (J.A. at 856-57.) Mullins did not personally talk to Bianca until February 1,1997. (J.A. at 857.)
3. On December 16, 1996, Detective Mullins prepared another Supplementary Offense Report. According to the report, “[Bianca] stated that she recognized the voice of the subject as a BM by the name of Todd or Ty.” (J.A. at 489, 866.) This report was based on other officers’ reports. (J.A. at 857.)
4. In Detective James Hickman Sr.’s affidavit, he states that “Bianca did not report witnessing the actual shooting of Stanley Beale.” (J.A. at 543A.) Hickman subsequently retracted this affidavit and submitted a second affidavit stating that Bianca “describefd] her father’s murderer to me.” (J.A. at 841.)
On June 15, 2000, Ernst signed an affidavit stating that Bianca “ ‘could provide no other information’ ... because of her emotional state.” (J.A. 835.) We therefore will not consider Officer Ernst’s supplemental offense report in making our decision today. The other documents listed above, however, provide compelling evidence suggesting that Bianca never saw the intruder the night of the murder and that she based her identification of Walker solely on the intruder’s voice.
We now turn to consideration of the above-referenced police reports. As noted above, Detective Mullins wrote two reports based on summaries provided by officers who interviewed Bianca the night of the murder. In the first report written on November 22,1996, he states that a “13 yr. old heard voice and stated that it sounded like Todd and she was positive that it was Todd[ ].” (J.A. at 485, 859.) In December of 1996, Detective Mullins wrote in a supplemental police report, “[Bianca] stated that she recognized the voice of the subject as a BM by the name of Todd or Ty.” (J.A. at 489, 866.)
Next, an affidavit submitted by Detective Hickman stated that Bianca recognized the murderer’s voice but was unable visually to identify him. (J.A. at 543A.) Hickman subsequently retracted this affidavit and submitted a second affidavit stating that Bianca “describe[d] her father’s murderer to me,” (J.A. at 841.) The handwritten notes accompanying his affidavit contain a physical description of the person Bianca knew as “Todd.” (J.A. at 847.) Detective Hickman’s handwritten notes detailing Bianca’s description, however, fail to indicate that she saw “Todd” on the night of the murder. Furthermore, Bianca’s description, unlike Catherine Taylor’s portrayal of the intruder, fails to mention what the intruder was wearing. (J.A. at 844.)
The Commonwealth argues that the autopsy and pre-sentence reports, both of which were provided to Walker, contain the same information found in the withheld police reports. We disagree.
The autopsy report, which was received by Walker prior to trial, stated that unnamed “witnesses inside the home heard the shots but did not witness the shoot *174 ing. ” (Supp. J.A. at 7.) (emphasis added). Moreover, the pre-sentence report stated that “[Catherine Taylor] ... and the daughter, Bianca fled into the bathroom. ... It was at that time, she heard three shots fired. ” (Pet’r Supp.App. 249-50.) (emphasis added). The pre-sentence report also states that Bianca advised Detective Hickman that “she recognized the voice of the suspect as a black male by the name of ‘Todd or Ty.’ ” (Pet’r Supp.App. 250.)
The second Strickler factor sets forth a requirement that it was reasonable for the petitioner to rely on the government’s assertion that it fulfilled its duty to disclose all Brady material. Strickler, 527 U.S. at 289, 119 S.Ct. 1936. We find that Walker has met this requirement.
Simply put, the availability of the autopsy and pre-sentence reports does not satisfy the prosecutor’s duty to disclose the other Brady material to Walker. The withheld reports provide persuasive evidence that Bianca did not see the shooter the night of the murder, whereas the files that were available earlier suggest only that Bianca did not witness the shooting. As such, the withheld documents would have provided substantial evidence impeaching Bianca’s trial testimony that she saw the person who shot her father. (J.A. at 27.) Thus, we find the first Strickler factor met here.
We begin our discussion of this factor by noting that Walker’s reliance argument is much stronger than that found in both Strickler and Banks in a notable respect: Walker filed a formal, explicit request for the disclosure of all Brady material. (Supp. J.A. at 32.) In contrast, Banks relied on the prosecutor’s assurances that the prosecutor would, “without necessity of motions provide you with all discovery to which you are entitled.” Banks, 540 U.S. at 677, 124 S.Ct. 1256 (internal quotation marks and citations omitted). Likewise, Strickler relied on the prosecution’s “open file policy” and the State assured him that a formal Brady motion was unnecessary. Strickler, 527 U.S. at 287, 119 S.Ct. 1936.
Although the prosecutor did not respond in writing to Walker’s Motion for Discovery and Inspection, she confirmed in open court that the Commonwealth had “provided the discovery that we are required to disclose, pursuant to the Rules of the Supreme Court and the statutory provisions that may be provided in the Virginia Code.” (J.A. at 10.) Subsequently, when Walker’s counsel continued to press the issue of disclosure during the motions hearing, the judge reassured him that the Commonwealth is constitutionally required to disclose any Brady material. (J.A. at 11.) Therefore, we find that Walker was reasonable not only in relying on the presumption that the Commonwealth would faithfully perform its duty to disclose, but also in relying on the explicit representation that the prosecution had disclosed all Brady material. Banks, 540 U.S. at 698, 124 S.Ct. 1256 (“It was not incumbent on Banks to prove these representations false[.]”).
The contention that documents in Walker’s possession might suggest that Bianca provided contradicting statements at trial does not diminish the reasonableness of Walker’s reliance on the Commonwealth’s representation that it had complied fully with Brady. In Strickler, the Supreme Court held that, even assuming the petitioner knew of the impeaching documents available in the prosecutor’s file, it was reasonable for the petitioner to accept the State’s “open file policy” and believe no additional impeaching evidence existed. 527 U.S. at 285, 119 S.Ct. 1936. We, too, find it was not unreasonable for Walker to assume no additional Brady material existed after the prosecutor told him that the *175 only such evidence related to the Beale murder was the presence of drugs in the victim’s system. (J.A. at 481.)
The Commonwealth also argues that it was unreasonable for Walker to rely on the prosecution’s affirmative response since Walker could have reasonably discovered all the information later obtained by his habeas counsel’s FOIA requests. We are unpersuaded.
The actual response to Walker’s habeas counsel’s requests is indicative of the “hunt” Walker embarked upon to obtain Brady material. The Attorney General denied outright Walker’s request for the Beale and Threat files. (J.A. at 492.) The police, however, turned over the Beale file. (J.A. at 491.) Nevertheless, when Walker’s habeas counsel followed up on the Threat file, he was informed that releasing the Beale file had been an error and the Attorney General advised the police not to disclose the Threat file. (J.A. at 493.)
The Commonwealth’s argument ignores the well-settled law that the prosecutor had a duty to disclose Brady material to Walker. Strickler, 527 U.S. at 280, 119 S.Ct. 1936. It is also violative of due process, as it condones the prosecutor’s ability to conceal documents and requires a defendant to search for Brady material. Banks, 540 U.S. at 696, 124 S.Ct. 1256 (“A rule thus declaring prosecutor may hide, defendant must seek, is not tenable in a system constitutionally bound to accord defendants due process.”) (internal quotation marks and citations omitted).
In short, the cause analysis focuses on prosecutorial misconduct, not on the defendant’s diligence. Furthermore, Strickler instructs us that the existence of cause ordinarily turns on factors external to the defense which, as in the instant case, impeded defense counsel’s efforts to comply with the State’s procedural rule. Strickler, 527 U.S. at 283 n. 24, 119 S.Ct. 1936.
The third and final Strickler factor requires that the prosecution confirm the petitioner’s reliance on the State’s disclosure. Strickler, 527 U.S. at 289, 119 S.Ct. 1936. We find that Walker has satisfied this requirement.
As a preliminary matter, it bears noting that in Strickler and Banks, the State confirmed the defendant’s reliance during state habeas proceedings. Strickler, 527 U.S. at 278, 119 S.Ct. 1936; Banks, 540 U.S. at 692-93, 124 S.Ct. 1256. Walker, however, received the Brady material before his state habeas proceeding. Nevertheless, “[t]he standard for cause should not vary depending on the timing of a procedural default.” Strickler, 527 U.S. at 284, 119 S.Ct. 1936 (internal quotation marks and citation omitted).
As already observed, prior to trial, the Commonwealth conveyed to Walker’s counsel that the only Brady material related to the Beale murder was the fact that the victim had drugs in his system. (J.A. at 481.) The Commonwealth later confirmed at a pretrial motions hearing that it had disclosed all Brady materials. (J.A. at 10.) This being the case, it is unnecessary for Walker to establish that the Commonwealth confirmed his reliance again during trial or on appeal. Stated differently, it was reasonable for Walker to assume that the prosecution would comply with a formal Brady motion without the need of constant confirmation. Therefore, we find that Walker has established cause such that he may be entitled to an evidentiary hearing on his Bianca Brady claim.
B.
Although we have found that Walker has established cause, to receive relief in federal court, he must also demonstrate that actual prejudice resulted from his failure to develop facts in state court proceedings. *176 Banks, 540 U.S. at 690-91, 124 S.Ct. 1256 (“Banks would be entitled to an evidentiary hearing in federal court if he could show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure.”) (internal quotation marks, alterations and citation omitted). To establish prejudice sufficient to overcome procedural default, the withheld evidence must be material. Id. at 698, 124 S.Ct. 1256; Strickler, 527 U.S. at 282, 119 S.Ct. 1936. Materiality is satisfied when “favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Banks, 540 U.S. at 698, 124 S.Ct. 1256 (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Under this standard, Walker must demonstrate that there is a “reasonable probability of a different result.” Kyles, 514 U.S. at 434, 115 S.Ct. 1555.
In Banks, the Supreme Court found prejudice because the lack of physical or forensic evidence made the witness’ testimony crucial to the prosecution. Banks, 540 U.S. at 701, 124 S.Ct. 1256. According to the Court, this was evident by the prosecution’s repeated references to the withheld evidence during the penalty phase to underscore Banks’ propensity to commit violent crimes. Id. at 700, 124 S.Ct. 1256. Although Banks’ trial counsel provided two witnesses to impeach the police informant, the defense witnesses were themselves impeached, a fact the prosecution stressed during its summation. Id. at 702, 124 S.Ct. 1256.
In Strickler, however, the Court did not find the requisite prejudice to overcome default. 527 U.S. at 296, 119 S.Ct. 1936. The testimony of the witness whose impeachment was at issue, “did not relate to [the petitioner’s] eligibility for the death sentence and was not relied upon by the prosecution at all during its closing argument at the penalty phase.” 527 U.S. at 295, 119 S.Ct. 1936. Furthermore, the Court noted indications that Strickler would have been sentenced to death even if the witness’ testimony had been completely excluded. Id. at 296, 119 S.Ct. 1936. For example, two other eyewitnesses placed petitioner at the mall where the victim was abducted and “considerable forensic and other physical evidence linkfed] petitioner to the crime.” Id. at 293-94, 119 S.Ct. 1936 (footnote omitted).
Here, similar to Banks, and unlike Strickler, the lack of forensic or other eyewitness evidence made Bianca’s testimony crucial to the prosecution and, thus, not cumulative. Banks, 540 U.S. at 701, 124 S.Ct. 1256 (stating that the testimony of the police informant, whose informant status was withheld, was “critical”); Strickler, 527 U.S. at 292, 119 S.Ct. 1936 (finding that the evidence provided compelling support for the conclusion that the petitioner would have been convicted of capital murder notwithstanding the testimony of witness whose impeachment was in question.) The prosecutor relied heavily on Bianca’s testimony as she made repeated references to Bianca’s identification of Walker as the shooter. Further, the prosecution emphasized to the jury that the case “comes down to identification and credibility.” (J.A. at 164-65.) The withheld documents could have been used by Walker, therefore, to undermine both Bianca’s ability to properly identify Walker as the shooter and her overall credibility.
Bianca’s testimony was the “centerpiece” of the case against Walker on the Beale murder because she was the sole “eyewitness.” Banks, 540 U.S. at 701, 124 S.Ct. 1256 (stating that the police informant’s testimony was the “centerpiece” of the prosecution’s penalty-phase case). No one else in the apartment with Bianca was *177 able to identify Walker. Moreover, unlike Strickler, the only physical evidence here that linked Walker to the crime was an unfired bullet. (J.A. at 86-92, 106-08, 149-50.)
Given the dearth of physical evidence and the centrality of Bianca’s testimony, the withheld evidence “could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Kyles, 514 U.S. at 435, 115 S.Ct. 1555 (footnote omitted). Furthermore, had Walker not been convicted of the murder of Beale, the Threat murder alone would not have been a sufficient basis for a capital murder conviction. Va. Code Ann. § 18.2-31(8) (“The following offenses shall constitute capital murder ... The willful, deliberate, and premeditated killing of more that one person within a three-year period.”); see also Strickler, 527 U.S. at 295, 119 S.Ct. 1936 (finding that the witness at issue “did not relate to the [the petitioner’s] eligibility for the death sentence.”)
Without Bianca’s testimony, the only evidence linking Walker to the Beale murder is the uncorroborated testimony of Tameria Patterson that she saw Walker enter the Randolph apartment and say “I shot him.” (J.A. at 52.) This lack of evidence underscores the centrality of Bianca’s testimony. Consequently, we find that Walker has established that actual, significant prejudice resulted from his inability to develop the factual basis of his Bianca Brady claim at trial.
IV.
For the foregoing reasons, we hold that Walker has established sufficient cause and prejudice to overcome the procedural default of his Bianca Brady claim and that an evidentiary hearing on the merits of his Bianca Brady claim is appropriate. Accordingly, the judgment of the district court is vacated and this case is remanded for an evidentiary hearing on Walker’s Bianca Brady claim.

VACATED AND REMANDED.