PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DARICK DEMORRIS WALKER,

        *Petitioner-Appellant,*

v.

LORETTA K. KELLY, Warden,
Sussex I State Prison,

        *Respondent-Appellee.*

No. 08-11

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:01-cv-01196-CMH-TCB)

Argued: September 22, 2009

Decided: December 16, 2009

Before TRAXLER, Chief Judge, and GREGORY and
SHEDD, Circuit Judges.

Affirmed by published opinion. Chief Judge Traxler wrote the
majority opinion, in which Judge Shedd joined. Judge
Gregory wrote a dissenting opinion.

## COUNSEL

**ARGUED**: Danielle Spinelli, WILMERHALE, Washington,
D.C., for Appellant. Katherine Baldwin Burnett, OFFICE OF

THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Craig Goldblatt, Heather M. Zachary, D. Hien Tran, Annie L. Owens, WILMER-HALE, Washington, D.C., for Appellant. Robert F. McDonnell, Attorney General of Virginia, Jerry P. Slonaker, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

---

## OPINION

TRAXLER, Chief Judge:

Darick Demorris Walker was convicted of capital murder in the deaths of Stanley Beale and Clarence Threat and sentenced to death.[1] In this, his fourth appearance before this court during federal habeas proceedings, Walker challenges the district court's order rejecting, after a full evidentiary hearing, his claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and denying his application for relief under 28 U.S.C. § 2254. Walker contends that this court previously determined the Commonwealth violated *Brady* by failing to disclose certain information to Walker's defense team. *See Walker v. Kelly ("Walker II")*, No. 04-22, 195 Fed. Appx. 169 (4th Cir. May 22, 2006). By conducting an evidentiary hearing and issuing a decision on the *Brady* claim, the district court failed, argues Walker, to adhere to this court's previous ruling. For the reasons that follow, we disagree.

---

[1]The evidence in this case is thoroughly recounted in the Virginia Supreme Court's decision affirming Walker's conviction and sentence on direct appeal, *see Walker v. Commonwealth*, 515 S.E.2d 565, 568-69 (Va. 1999), as well as various decisions from this court during federal habeas proceedings, *see, e.g.*, *Walker v. True ("Walker I")*, No. 02-22, 67 Fed. Appx. 758, 759-61 (4th Cir. May 6, 2003) (per curiam). We will recite the facts here only to the extent necessary to address the *Brady* issue presented to us.

## I.

## A.

Walker contends that the prosecution failed to disclose evidence that would have impeached the trial testimony of Bianca Taylor, Beale's daughter and a crucial witness for the Commonwealth.[2] Bianca testified that she saw Walker break into her family's apartment and shoot her father, and she identified Walker at trial as the shooter.

According to Walker, the Commonwealth suppressed four pieces of evidence that the defense would have used to impeach Bianca's eyewitness testimony at trial. First, Walker alleges that the prosecution failed to disclose a Supplementary Offense Report from Officer David Ernst (the "Ernst Report") summarizing his interview of Bianca on the night of the shooting. The Ernst report does not indicate that Bianca claimed to have seen her father's murder. Rather, it notes that, immediately prior to the shooting, Bianca was on the phone with Karen Rudolph, who told Bianca that "Todd" – the name by which Bianca knew Walker – was coming to Bianca's apartment. According to the Ernst Report, the shooting commenced a few moments later.

The second piece of evidence at issue is a handwritten note from Detective Curtis Mullins, dated the night of the shooting, indicating that "13 [year-]old [Bianca] heard [a] voice and stated that it sounded like Todd and she was positive that it was Todd's." J.A. 1112. Detective Mullins's notes, however, were based not on information he gleaned first-hand but

---

[2]Walker claimed that the prosecution also violated *Brady* by failing to disclose evidence that would have impeached the testimony of Commonwealth witnesses Tameria Patterson and Christopher Miller. The state court rejected this portion of Walker's *Brady* claim on the merits. We are concerned in this appeal only with Walker's *Brady* claim as it relates to Bianca.

on information given to him by Officer Ernst and Detective James Hickman.

Third, Walker claims the Commonwealth failed to disclose a Supplementary Report prepared by Detective Mullins (the "Mullins Report") nearly one month after Beale's murder, indicating that Bianca "stated that she recognized the voice of the subject as a [black male] by the name of Todd or Ty." J.A. 1112.

Fourth, and finally, Walker asserts that the prosecution failed to disclose the notes of Detective Hickman from the night of the shooting. Hickman's notes reflect that he interviewed Bianca and she identified "Todd" as the killer and physically described him; however, Hickman's notes do not expressly indicate whether or not Bianca saw the shooting first hand.

## B.

Walker first raised this *Brady* claim during state habeas review, having not pursued it on direct appeal. The Supreme Court of Virginia concluded that Walker's claim was barred under *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), which precludes a habeas petitioner from asserting a claim that "could have been [but was not] raised and adjudicated at . . . trial and upon his [direct] appeal," *id.* at 682.[3] Therefore, according to the Virginia Supreme Court, the factual and legal

---

[3]The Virginia Supreme court explained as follows:

[Walker's] claim I in part alleges that exculpatory evidence impeaching the testimony of witness Bianca Taylor was withheld by the Commonwealth in violation of petitioner's due process rights as enunciated in *Brady v. Maryland*, 373 U.S. 83 (1963). The Court holds that this portion of claim I is procedurally defaulted by operation of the rule in *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 80 (1974).

J.A. 402.

basis for Walker's *Brady* claim was available to the defense at the time of Walker's direct appeal.

Walker then sought relief in federal court under 28 U.S.C. § 2254, raising a number of claims, including his *Brady* claim that the Commonwealth withheld evidence that would have impeached Bianca's credibility. Walker alleged that "[a]lthough the prosecution's star witness [Bianca] testified that she watched Walker shoot her father, it is now clear, based on evidence the prosecution withheld, that this witness did not see the shooting or the shooter." J.A. 417.

The Commonwealth filed a motion to dismiss, arguing that to the extent Walker's *Brady* claim related to the testimony of Bianca, it had been procedurally defaulted and was thus not amenable to review by a federal habeas court. Federal habeas courts are precluded from reviewing any claim that "a state court has declined to consider [on] its merits on the basis of an independent and adequate state procedural rule." *Bacon v. Lee*, 225 F.3d 470, 476 (4th Cir. 2000); *see Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Application of the *Slayton* procedural bar qualifies as such an adequate and independent state law ground. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2005). Review by a federal court is permissible only if Walker is able to establish cause to excuse the default and prejudice resulting from the alleged constitutional violation. *See Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Vinson*, 436 F.3d at 417.[4]

Walker did not dispute that his *Brady* claim was procedurally defaulted, but he argued that he could demonstrate cause and prejudice. Specifically, Walker argued that the impeach-

---

[4]A federal habeas petitioner may also obtain review of a procedurally defaulted claim if he shows that the court's failure to review such a claim will result in a fundamental miscarriage of justice. *See McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000). Walker has not advanced such a theory. *See Walker I*, No. 02-22, 67 Fed. Appx. at 767 n.5.

ment evidence remained undisclosed for months after his direct appeal until state habeas counsel obtained it via a Freedom of Information Act ("FOIA") request. Walker claimed, therefore, that the Commonwealth's failure to disclose established cause in that the defense was unable to raise a claim based on information it did not have.

The district court rejected Walker's cause argument, concluding that Walker failed to rebut by clear and convincing evidence the state court's finding that "appellate counsel was sufficiently on notice of the factual predicate of the [*Brady*] claim that it could have been raised on direct review." J.A. 597-98; *see* 28 U.S.C. § 2254(e)(1). The district court noted that Walker's state habeas petition acknowledged that prior to trial defense counsel received a Presentence Report which referenced two undisclosed police reports suggesting Bianca did not actually see the shooting. Walker's state habeas petition, which included a claim that defense counsel rendered ineffective assistance by failing to raise the *Brady* issue, also alleged that the defense received a Report of Autopsy prior to trial that indicated the witnesses did not see the shooting. Indeed, Walker's state habeas petition offered counsel's notes to demonstrate counsel was aware of reports stating that Bianca did not see the murder of her father. The district court found that

> [t]his evidence in the record establishes that Walker had knowledge of the factual predicate of his *Brady* claim with regard to Bianca's testimony prior to the filing of his direct appeal. As a result, Walker has failed to establish by clear and convincing evidence that the factual predicate of his claim was not known to his appellate counsel prior to the filing of his direct appeal . . . [and] [t]hus, Walker fails to show cause for his procedural default as a result of governmental interference.

J.A. 599. Having concluded that Walker failed to establish cause, the district court did not address the prejudice compo-

nent.[5] The district court granted the Commonwealth's motion to dismiss on the basis of the pleadings, state court filings and other documents presented to it—no evidentiary hearing was conducted.

On appeal, this court affirmed and held that Walker "was aware or should have been aware that documents had been suppressed when he appealed his conviction." *Walker I*, No. 02-22, 67 Fed. Appx. at 767. We reasoned that because Walker admitted in his state habeas petition to receiving the Presentence Report prior to trial, he was unable to rebut the state court's determination that he could have raised the *Brady* claim on direct appeal:

> Indeed, as Walker admitted . . . , shortly before trial the defense received a Presentence Report referencing two undisclosed police reports containing the same information as the [alleged undisclosed evidence]. This Presentence Report, by referencing these undisclosed documents, evidenced the Commonwealth's suppression of the alleged *Brady* material. The factual basis for the assertion of Walker's *Brady* claim, therefore, was available not only before direct appeal, but before sentencing.

*Id.* at 767-68 (footnote omitted). We concluded that consideration of actual prejudice was unnecessary in light of Walker's failure to establish cause. The Supreme Court subsequently granted Walker's petition for a writ of certiorari, vacated this court's decision in *Walker I*, and remanded for this court to reconsider an ineffective assistance claim that is unrelated to

---

[5]Walker also theorized that even if the Commonwealth's nondisclosure did not establish cause, counsel's ineffective assistance in failing to raise the *Brady* claim on direct appeal constituted cause. The district court addressed whether counsel's performance in this regard resulted in prejudice to Walker; however, Walker's ineffective assistance claim is not at issue in this appeal.

the current appeal. *See Walker v. True*, 540 U.S. 1013 (2003). Following this court's subsequent decision, *see Walker v. True*, 401 F.3d 574 (4th Cir. 2005), the Supreme Court again granted certiorari and remanded the case to this court for reconsideration of Walker's *Brady* claim in light of *Banks v. Dretke*, 540 U.S. 668 (2004). *See Walker v. True*, 546 U.S. 1086 (2006).

On remand, a split panel of this court determined that the facts, when viewed in the light most favorable to Walker as the nonmoving party, were sufficient to support a finding of cause and prejudice to overcome the procedural default and to necessitate a full evidentiary hearing on the merits of the *Brady* claim. *See Walker II*, No. 04-22, 195 Fed. Appx. at 175, 177.[6] Noting that the prosecutor confirmed in open court, prior to trial, that the Commonwealth had provided Walker with the required discovery, the court concluded that the fact that "documents in Walker's possession might suggest that Bianca provided contradicting statements at trial does not diminish the reasonableness of Walker's reliance on the Commonwealth's representation that it had complied fully with *Brady*." *Id.* at 174. Moreover, we rejected the Commonwealth's position that "it was unreasonable for Walker to rely on the prosecution's affirmative response since Walker could have reasonably discovered all the information later obtained by his habeas counsel's FOIA requests." *Id.* at 175. Thus, we held that Walker alleged sufficient facts to establish cause.

With respect to the prejudice requirement, the majority concluded that "the lack of forensic or other eyewitness evidence made Bianca's testimony crucial to the prosecution," *id.* at 176, and that, in turn, the undisclosed impeaching evidence "'could reasonably be taken to put the whole case in

---

[6]Although this opinion was not technically the second decision in the *Walker* series of appeals, we designate it for ease of reference as *Walker II* to signify that it was the Fourth Circuit's second decision addressing Walker's *Brady* claim.

such a different light as to undermine confidence in the verdict,'" *id.* at 177 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). Based on the facts before the panel on the Commonwealth's motion to dismiss, the majority concluded that "[w]ithout Bianca's testimony, the only evidence linking Walker to the Beale murder is the uncorroborated testimony of Tameria Patterson that she saw Walker enter the Randolph apartment and say 'I shot him.'" *Id.* The majority concluded that Walker demonstrated that "prejudice resulted from his inability to develop the factual basis of his Bianca *Brady* claim at trial." *Id.*

Thus, having reconsidered Walker's *Brady* claim in light of *Banks*, the *Walker II* panel concluded that the district court erroneously granted the Commonwealth's motion to dismiss the procedurally defaulted *Brady* claim. Given the procedural posture of the appeal, the court essentially held that, accepting the allegations of Walker's federal habeas petition as true, Walker established cause and prejudice to excuse the default. Therefore, we vacated the order of the district court and we directed that an evidentiary hearing on the merits be held. *See id.*

On remand from this court, the district court referred the case to the magistrate judge for an evidentiary hearing on the merits of Walker's *Brady* claim. Walker offered testimony from three witnesses. Rebecca Norris, co-counsel for the defense during Walker's 1998 trial, testified that she did not receive any of the alleged *Brady* material prior to trial, and that she would have kept any such documents in her file. And, she indicated that had lead defense counsel, the late Robert Johnson, received any such documents, he would have shared them with her. During the state habeas proceedings, Norris turned over her files to the Commonwealth Attorney General's Office and permitted Walker's habeas counsel an opportunity to duplicate the contents of the file. At the time that Walker's trial counsel turned over Walker's files to habeas counsel, the *Brady* material was not contained in the files.

Finally, Norris testified that none of the information available to her, including the Presentence Report, led her to believe the prosecution was withholding exculpatory information.

Walker also put up Tameria Patterson, the witness who testified at trial that Walker entered an apartment she was visiting and stated, "I shot him." J.A. 830. At the evidentiary hearing, Tameria testified that Bianca told her that she recognized the shooter's voice while she was in the bathroom, but that Bianca never indicated whether she actually saw the shooter. The final witness for Walker, Carolyn Patterson, essentially confirmed Tameria's testimony, recalling that Bianca recognized the shooter's voice but did not claim to have seen the shooter.

The Commonwealth called five witnesses. Retired homicide detective James Hickman testified that he interviewed Bianca on the night of the murder and took handwritten notes. According to Hickman, he responded to the homicide call and conducted informal interviews of Bianca and other witnesses. Hickman described Bianca as "very upset[,] . . . crying, [and] hysterical." J.A. 847. During the interviews, Hickman took notes which he turned over to lead detective Curtis Mullins; Hickman did not prepare a formal report of the interview and had no further involvement in the case after the night of the shooting. Although Hickman's notes did not expressly state that Bianca saw the shooting, Hickman testified that, to the best of his recollection, on "that particular night Bianca advised me that she did see the shooter." J.A. 875. Furthermore, Hickman testified that Bianca provided a physical description of the shooter. Based on his notes and his independent recollection, Hickman testified that his notes reflected Bianca's description of the man she saw that night as opposed to a description of Walker from memory. Hickman indicated that "[i]f Bianca Taylor had told [me] that, I didn't see him, [I would have] reflected that in [my] notes." J.A. 849.

Finally, Hickman clarified two contradictory affidavits he executed regarding his interview of Bianca. In 2000, after talking with an investigator employed by Walker, Hickman signed an affidavit indicating that Bianca did not state that she actually witnessed the shooting of her father. Hickman testified that he did not have access to his notes at the time he signed the affidavit. In 2001, Hickman signed a second affidavit after reviewing his notes, which were provided by the Attorney General's office. The second Hickman affidavit indicated that Bianca had, in fact, described the shooter. At the evidentiary hearing, Hickman testified that the second affidavit was correct.

David Ernst, a Richmond police officer who responded to the scene, prepared a Supplemental Offense Report in which he noted that Bianca stated that, prior to the shooting, she was talking on the telephone to Ms. Randolph, who told her that "Todd and Karen are coming to talk to you." J.A. 882. Ernst did not recall whether Bianca stated that she saw the shooter; however, he testified that if Bianca had so stated, or if she had provided a description of the shooter, he would have included it in his report. Ernst did not speak with Bianca after the night of the shooting.

Bianca Taylor also testified at the evidentiary hearing. Bianca was 13 years old at the time of the murder and 15 years old when she testified at Walker's trial. At the hearing, she reiterated much of her trial testimony, acknowledging that, prior to the shooting, she was on the telephone with Karen Randolph who told Bianca that "we're coming over." J.A. 891. Bianca testified unequivocally that she saw Walker shoot her father, that she had seen him numerous times before that night, and that she told the detectives that she had seen Walker shoot her father. Subsequently, Bianca identified Walker out of a photo lineup presented to her by Officer Mullins, although she knew him as "Todd or Ty" at that time. J.A. 894.

Next, Joy Robinson, the lead prosecutor, recalled that she followed an open file policy in this case, "mak[ing] available to the defense whatever was in [the] file." J.A. 898. Robinson testified that the four *Brady* documents in question looked familiar, but she could not remember specifically whether or not they were in the file or whether she turned this information over to the defense. However, Robinson stated that "[i]f I had it, I did [turn it over]." J.A. 911. Robinson acknowledged that when she reviewed the file after the trial was finished, she noticed that various documents – the motions, in particular - were missing. According to her testimony, there was never any evidence that led Robinson to believe that Bianca identified Walker as the shooter not because she saw him but only because she recognized his voice.

Finally, Curtis Mullins, the lead detective in the Beale murder, testified that he did not talk to Bianca until he presented the photographic lineup to her a few months after the shooting. On the night of the shooting, Mullins talked to Bianca's mother, Detective Hickman and possibly some other officers. Mullins's handwritten notes reflect that Hickman reported that the "[d]oor was kicked in and victim shot," and that "13-year old heard voice and stated that it sounded like Todd, and she was positive that it was Todd's." J.A. 928. Mullins agreed that his notes "don't reflect that [Hickman] told [him] that [Bianca] . . . said she actually saw the person," *id.*, but he observed that the notes were not exhaustive. Furthermore, Mullins testified that, as far as he could recall, he never received any information suggesting that Bianca did not actually see the shooter.

The magistrate judge found that Walker failed to establish by a preponderance of the evidence that the alleged *Brady* material was not disclosed to the defense by the Commonwealth, and thus that Walker failed to prove the second element of a *Brady* claim. *See Strickler*, 527 U.S. at 282 (petitioner must prove that the evidence was "suppressed by the State, either willfully or inadvertently"). Without address-

ing the other two elements, the magistrate judge recommended that the district court deny Walker relief on the *Brady* claim.

The district court agreed with the magistrate judge's factual determination that Walker did not establish by a preponderance of the evidence that the Commonwealth suppressed the alleged *Brady* material:

> Petitioner argues that [defense counsel] Norris's testimony that she did not recall receiving the four documents at issue ought to satisfy [his] burden that the documents were not disclosed by the State. However, this ignores the affirmative evidence offered by Respondent that the Commonwealth Attorney's Office had an open file policy, that Robinson testified she gave defense counsel all evidence she possessed related to the case, and that the Pre-Sentence Report contained information very similar to what was in [Detective] Mullins's Report.

J.A. 1119. The district court adopted the magistrate judge's recommended conclusion that Walker failed to establish the failure-to-disclose element of his *Brady* claim.

At the behest of both parties, however, the district court also addressed the other two *Brady* elements. The court found that Walker failed to establish that the evidence allegedly withheld by the Commonwealth was favorable to him. *See Strickler*, 527 U.S. at 281-82. Rejecting Walker's view that the evidence in question established Bianca heard but did not see the shooter, the district court concluded that "[t]he evidence at issue does not affirmatively show that Bianca told police she only heard the shooter's voice and did not see him," as "Hickman's notes provide a physical description of the shooter given by Bianca." J.A. 1120. Furthermore, the court found that, "[b]ased on the evidence presented at the evidentiary hearing, had Petitioner's defense counsel

attempted to use the evidence at issue to impeach Bianca's testimony at trial[,] the effect would have been negligible." J.A. 1120-21.

Finally, the district court determined that the alleged *Brady* material was not material to the outcome of Walker's trial, *see Strickler*, 527 U.S. at 282, that is, the evidence in question "could [not] reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," *Kyles*, 514 U.S. at 435. According to the district court,

> [h]ad Petitioner's defense counsel used the evidence at issue to challenge Bianca's testimony that she witnessed the murder, the Commonwealth would have introduced the uncontroverted evidence presented at the evidentiary hearing that Bianca knew Petitioner and had seen him on multiple occasions prior to the shooting. Such evidence, had it been presented, would have only bolstered Bianca's identification of Petitioner as the man who shot her father. Furthermore, Bianca's mother testified at trial that Bianca argued with Petitioner after he entered the apartment but before shooting Beale. Petitioner never challenged this testimony. Had defense counsel challenged that Bianca actually saw the Petitioner, Bianca's mother's testimony would have rebutted the claim.

J.A. 1121. Additionally, the court found that the materiality of the impeachment evidence was undercut by Tameria's testimony that Walker stated "I shot him" and by evidence "showing that a bullet had been found on the floor of Petitioner's apartment that had been loaded into the gun that was used to shoot Beale." J.A. 1122.

II.

Walker contends that this court resolved the merits of his *Brady* claim in *Walker II*. In holding a full evidentiary hearing

and issuing its decision on the merits, Walker argues, the district court impermissibly relitigated the *Brady* issue and violated the law of the case doctrine or, more specifically, the mandate rule. The law of the case doctrine promotes judicial economy and finality by providing "'that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). The mandate rule is "merely a specific application" of this doctrine that "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (internal quotation marks omitted). In short,

> once the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court . . . *unless*: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

*United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (internal quotation marks omitted). As explained below, we conclude that *Walker II* did not hold –- and could not have held—that Walker was entitled to relief on his *Brady* claim.

There are three fundamental components to a *Brady* claim: (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State"; and (3) the evidence must be material to the defense, that is, "prejudice must . . . ensue[ ]." *Strickler*, 527 U.S. at 281-82. The Supreme Court has explained that the cause and prejudice showing necessary to overcome a defaulted *Brady* claim "'parallel[s] two of the three components of the alleged *Brady*

violation itself.'" *Banks*, 540 U.S. at 691 (quoting *Strickler*, 527 U.S. at 282). Thus, the required showing of cause corresponds to the *Brady* requirement that the petitioner show that the state suppressed the evidence. *See Banks*, 540 U.S. at 691 ("[A] petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence . . . ."). The showing of prejudice required to excuse a procedural default corresponds to the *Brady* prejudice requirement. *See id.* ("[C]oincident with the third *Brady* component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes.").

Walker's argument is premised on the interplay between "cause and prejudice" and the second and third elements of a *Brady* claim. His primary focus is on language in *Banks* stating that "if [petitioner] succeeds in demonstrating 'cause and prejudice,' he will *at the same time succeed* in establishing the elements of his . . . *Brady* . . . claim." *Id.* (emphasis added). Based on *Banks*, Walker contends that when the *Walker II* panel concluded that he successfully demonstrated cause and prejudice, it necessarily concluded that he simultaneously established the corresponding *Brady* elements—that the Commonwealth suppressed evidence and that the evidence was material to the defense. As for the remaining *Brady* element, Walker argues that *Walker II* also found that he established that the evidence in question was favorable.

Walker misreads the scope of *Walker II*. First, the majority opinion did not hold that Walker successfully established that the Commonwealth either suppressed the evidence at issue or that the evidence was material. Indeed, the majority made very clear that Walker's showing was sufficient to overcome the procedural default hurdle and to allow him *to pursue* his *Brady* claim:

> [W]e hold that Walker has established sufficient cause and prejudice to overcome the procedural

default of his Bianca *Brady* claim and that an *evidentiary hearing on the merits* of his Bianca *Brady* claim is appropriate. Accordingly, the judgment of the district court is vacated and this case is remanded for an evidentiary hearing on Walker's Bianca *Brady* claim.

*Walker II*, 195 Fed. Appx. at 177 (emphasis added). It could not be more plain from this language that the panel was making no decision whatsoever with regard to the *merits* of Walker's *Brady* claim except to direct the district court to conduct an evidentiary hearing so that the merits could then be decided. The question before this court in *Walker I* was whether the district court properly granted the Commonwealth's motion to dismiss the defaulted *Brady* claim on the basis that Walker failed to establish cause and prejudice. The Supreme Court's remand for reconsideration in light of *Banks* did not change the posture of the case—*Walker II* still involved an appeal from an order granting the Commonwealth's motion to dismiss for procedural default. Thus, the *Walker II* panel was tasked with reconsidering whether Walker's allegations were sufficient to establish cause and prejudice to excuse the default and permit consideration of Walker's *Brady* claim on the merits. Not only did *Walker II* not make any factual or legal determinations regarding the elements of a *Brady* claim – as Walker suggests – but it expressly did not reach the merits and limited its analysis to the procedural default issue. *See id.* at 175 ("[W]e find that Walker has established cause such that he *may be entitled to an evidentiary hearing* on his Bianca *Brady* claim.") (emphasis added); *id.* at 177 ("[W]e find that Walker has established that actual, significant prejudice resulted from his inability to develop the factual basis of his Bianca *Brady* claim at trial.").

Furthermore, we reject Walker's argument that even if *Walker II* did not expressly determine that he established at least two of the three elements of his *Brady* claim, then the Supreme Court effectively did so in *Banks* when explaining

that, by establishing cause and prejudice to excuse a procedural default, the petitioner simultaneously established the requisite *Brady* elements. *See Banks*, 540 U.S. at 703. *Banks* was decided in light of a record developed through a full-blown evidentiary hearing on the *Brady* issue. *See id.* at 684-86. By contrast, there had been no such evidentiary hearing at the time *Walker II* was decided; the matter was before the *Walker II* panel on a motion to dismiss. For purposes of the Commonwealth's motion to dismiss, the record in *Walker II* consisted of the factual allegations set forth in the pleadings which this court was required to accept as true, along with documents attached from the state habeas record. There was no evidence from the Commonwealth, however, regarding what information was or was not given to defense counsel on the issues raised.

In proceedings under § 2254, the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss. *See Walker v. True*, 399 F.3d 315, 319 n.1 (4th Cir. 2005); 28 U.S.C. § 2254, Rules Governing Section 2254 Cases in the United States District Courts, Rule 11 (incorporating the FRCP "to the extent that they are not inconsistent with any statutory provisions or these rules"). Thus, a motion to dismiss a § 2254 petition under Rule 12(b)(6) tests the legal sufficiency of the petition, requiring the federal habeas court to "assume all facts pleaded by the § 2254 petitioner to be true." *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009) (internal quotation marks and alteration omitted). Because the Commonwealth filed its answer to Walker's petition and its motion to dismiss simultaneously, it technically should have filed the motion under Rule 12(c) as one for judgment on the pleadings. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). We will construe the Commonwealth's motion as a motion under Rule 12(c) which is assessed under the same standard that applies to a Rule 12(b)(6) motion. *See Edwards*, 178 F.3d at 243.

In assessing whether the § 2254 petition states a claim for relief, the district court must consider "the face of the petition and any attached exhibits." *Wolfe*, 565 F.3d at 169 (internal quotation marks omitted). Here, the district court was presented with a substantial amount of material from the record of the state habeas proceeding, including affidavits and evidence presented at trial. A court may consider such materials without having to convert the Rule 12(b)(6) motion to one for summary judgment under Rule 56(b). Moreover, a federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

We read nothing in *Banks* that renders the procedural context meaningless. *Walker II* clearly and expressly held that, assuming the truth of Walker's assertions, he came forward with sufficient evidence to survive the Commonwealth's dispositive motion and advance his claim for a merits determination. Thus, the district court did precisely what it was expressly instructed to do –- conduct an evidentiary hearing on the *Brady* issue and render a decision on the merits.

## III.

Walker next contends that even if the district court properly conducted an evidentiary hearing, the evidence developed at the hearing did not differ materially from the facts before the court in *Walker II*. Thus, Walker argues, the district court was obligated to adhere to this court's determination in *Walker II* that, for purposes of the Commonwealth's motion to dismiss, Walker alleged sufficient facts to establish that the prosecution failed to disclose the *Brady* material and that Walker suffered actual prejudice from the nondisclosure of this evidence. According to Walker, no additional evidence was adduced that would cast doubt onto these conclusions.

We disagree. Walker's argument appears to rest on a couple of false premises. The first presumes that *Walker II* made

a merits determination that the Commonwealth committed a *Brady* violation, and the second presumes that *Walker II*'s conclusions govern unless "called into question" by new evidence presented at the hearing. The first is false for the reasons explained in detail above. The second is false in that it suggests the issue before the district court was whether the Commonwealth produced sufficient additional evidence to rebut the presumptive *Brady* violation. Moreover, Walker's argument subverts the burden of proof, which belonged to him on remand. *See Garlotte v. Fordice*, 515 U.S. 39, 46 (1995).

The issue before the district court on remand was simply whether Walker's proof satisfied the three elements of a *Brady* claim. We review the district court's legal conclusions de novo and its findings of fact for clear error. *See Quesinberry v. Taylor*, 162 F.3d 273, 276 (4th Cir. 1998); *cf. Monroe v. Angelone*, 323 F.3d 286, 300-01 (4th Cir. 2003) (reviewing for clear error the district court's conclusions regarding whether the habeas evidence established the elements of a *Brady* claim). As discussed herein, we conclude that the district court did not clearly err in finding that Walker failed to prove that the evidence was "suppressed by the State" and that the district court properly determined that no prejudice "ensued" from the alleged nondisclosure. *Strickler*, 527 U.S. at 282.

*Favorability of the Items Allegedly Suppressed*.

In order to establish a *Brady* violation, the evidence suppressed by the state "must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Id.* at 282. As noted previously, the district court concluded that Walker failed to establish by a preponderance of the evidence that the items allegedly withheld were favorable to Walker's defense. The court explained that

> [t]he evidence at issue does not affirmatively show
> that Bianca told police she only heard the shooter's

voice and did not see him. Indeed, Hickman's notes provide a physical description of the shooter given by Bianca. Moreover, the evidence presented at the evidentiary hearing shows that Bianca was hysterical and emotionally distraught when interviewed by detectives on the night of her father's murder. She has no independent recollection regarding what she told the detectives . . . Based on the evidence presented at the evidentiary hearing, had [Walker's] defense counsel attempted to use the evidence at issue to impeach Bianca's testimony at trial the effect would have been negligible.

J.A. 1120-21.

Walker contends that the district court applied the wrong legal standard in determining whether the evidence at issue was favorable. Specifically, Walker argues that the district court improperly conflated the issue of whether the alleged undisclosed evidence was favorable with the separate issue of whether it was material in light of the record as a whole. *See Kyles*, 514 U.S. at 451 (recognizing that the "favorable tendency" of a given piece of evidence should be assessed without regard to the "weight of the evidence" as a whole); *Strickler*, 527 U.S. at 282 (concluding that the impeaching character of the evidence in question was apparent from the contrast between the witness's trial testimony and the undisclosed evidence).

It is somewhat unclear whether the district court based its conclusion on the *effect* of the alleged *Brady* documents on the trial as a whole in light all the evidence, as opposed to the impeachment *character* of the alleged *Brady* documents, if any. During the evidentiary hearing, Bianca affirmed the accuracy of her trial testimony that she heard the front door being forced open, saw Walker enter and then saw him shoot her father. She emphatically rejected the suggestion that she might have told officers that she recognized the shooter by

voice, not sight, because she "did see him." J.A. 890. Her testimony, however, may go to the weight of the so-called impeachment evidence rather than its tendency to contradict the Commonwealth's star witness. *See Kyles*, 514 U.S. at 451.

Because the district court's decision can easily be affirmed on its disposition of the suppression and materiality *Brady* elements, however, we need not determine whether the district court properly concluded that Walker failed to establish that the evidence was favorable.

*Suppression of the alleged Brady material.*

In arguing that the evidence does not permit us to affirm the district court's finding that he failed to prove the Commonwealth suppressed the *Brady* material, Walker points to evidence showing that the documents were not in defense counsel's files at the time the files were surrendered to habeas counsel. Indeed, the parties stipulated at the evidentiary hearing "that on the date that Mr. Walker's habeas counsel received the files from Mr. Walker's trial counsel, . . . [the documents] were not in those files." J.A. 825. The record also contained an affidavit from Rebecca Norris, Walker's trial counsel, indicating that prosecutor Joy Robinson provided the defense team with Beale's autopsy report, an offense report, crime scene photos, and other items; however, Norris indicated that "Robinson never provided any additional information that would have alerted us that it was possible that Bianca may not have actually seen Walker enter her home." J.A. 581. At the hearing, Norris testified that she did not "believe" she received any of the alleged *Brady* material prior to trial and that she would have kept them in the file as a matter of course if she had received them. And, Norris reaffirmed her position that "Joy Robinson never told [her] that there was any evidence that [Bianca] didn't see the shooter but only heard his voice." J.A. 823. Finally, Walker also highlights prosecutor Robinson's testimony that she could not recall whether she

had the *Brady* materials in her files prior to trial or whether she specifically disclosed these items to the defense.

Having rejected Walker's view that *Walker II* established binding factual determinations, we review the district court's findings under the deferential clear error standard of review:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). A district court's finding of fact is "'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Although there is evidence in the record that supports Walker's position, the district court's conclusion is certainly plausible in light of the evidence as a whole and the allocation of the burden of proof to Walker. Robinson testified that she observed an open file policy in the Walker case and that she "ma[d]e available to the defense whatever was in [her] file." J.A. 898. According to Robinson, the alleged *Brady* materials were items that her office commonly received from the police department; Robinson typically included in her case file "whatever the police department had." J.A. 900. For that reason, and because Robinson testified that she was "very familiar" with the alleged *Brady* documents, Robinson believed that it was "probable" that she had the items at issue in her files and that, in turn, she disclosed these items to defense counsel, as was her custom. Moreover, Robinson reaffirmed

at the hearing her affidavit testimony suggesting that the attorneys discussed the documents at issue:

> In this case I distinctly recall having a conversation in my office with one of Walker's attorneys about reports that Bianca apparently told police that she recognized Walker's voice. I also remember telling the defense that despite these reports, Bianca had picked Walker out of a photo . . . lineup.

J.A. 906.

Norris's testimony, as well, supports the conclusion that the district court did not commit clear error in determining that the Commonwealth turned over these materials to the defense. For example, Norris testified that the defense files were incomplete, having once contained "investigatory reports" and "offense reports." J.A. 802. Norris also admitted that she was unable to say with certainty that her co-counsel gave her all of the information in his possession, although Norris did not believe that co-counsel would have withheld anything from her. Furthermore, Norris acknowledged that, prior to trial, she had the Medical Examiner's report which contained a statement that "[w]itnesses inside the home heard the shots but did not witness the shooting." J.A. 810. Norris also had the presentence report which incorporated a statement from the Mullins Report that Bianca "recognized the voice of the suspect as a black male by the name of Todd or Ty." J.A. 820. And, the record includes Norris's handwritten, pre-trial notes, reflecting that she was aware of the information included in the alleged *Brady* material.[7]

In light of the totality of the evidence, the district court properly determined that Walker failed to prove by a prepon-

---

[7]In pertinent part, her notes posed the question whether the defense could "get in[to]" evidence the "Autopsy [which] says no witnesses on Beale" or the "Offense Rep[or]t [which] says no witnesses." J.A. 1017.

derance of evidence that the Commonwealth suppressed the items at issue.

*Materiality of the suppressed evidence.*

*Brady* "does not 'automatically require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict.'" *Moseley v. Branker*, 550 F.3d 312, 318 (4th Cir. 2008) (quoting *United States v. Bagley*, 473 U.S. 667, 677 (1985)) (internal quotation marks omitted). Evidence is considered material when it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434.

A glaring preliminary problem for Walker is that none of the *Brady* documents were independently admissible to impeach Bianca because she did not prepare the documents or adopt or subscribe to the statements contained therein. *See United States v. Barile*, 286 F.3d 749, 757 (4th Cir. 2002) (noting that "[o]nly prior inconsistent statements *made by the witness* are admissible as impeachment evidence") (emphasis added); *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[W]e conclude that a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."). Walker's defense team would have been forced to call officers Hickman, Mullins, and Ernst as witnesses to testify about their respective reports and interview notes. Of course, having the benefit of a full-blown evidentiary hearing after remand, we now know how these witnesses would have testified. For example, Detective Hickman testified that Bianca did tell him that she

saw Walker murder her father even though his notes did not so reflect.

Moreover, even if the alleged *Brady* evidence could be used to impeach Bianca's testimony that she saw Walker shoot her father, there was substantial evidence, as noted by the district court, that the Commonwealth would have offered in rebuttal. For example, the evidence is uncontroverted that Bianca had seen Walker before on many occasions. Moreover, Bianca's mother testified that Bianca argued with Walker after he entered the apartment but before he shot Beale. Tameria Patterson testified that on the night of the shooting, Walker entered her apartment and stated "I shot him." Additionally, the Commonwealth presented evidence that a round of ammunition that had been loaded into the murder weapon was recovered from the floor of Walker's apartment.

In light of the evidence presented at the hearing and the record in its entirety, we conclude that the district court properly determined that, even if Walker were able to show that the evidence at issue was withheld *and* that it was favorable to him, the alleged Brady material does not undermine confidence in the guilty verdict.

IV.

For the foregoing reasons, the decision of the district court is affirmed.

*AFFIRMED*

GREGORY, Circuit Judge, dissenting:

Today, the majority affirms the district court's dismissal of Walker's *Brady* claim in this capital case only by departing from this Court's prior decision in *Walker II*, 195 Fed. App'x 169 (4th Cir. 2006). Having heard *Walker II*, I disagree with

the majority's interpretation of the case. This Court's determinations in *Walker II* that Walker established cause and prejudice to overcome procedural default were dispositive of Walker's *Brady* claim. Therefore, I respectfully dissent.

## I.

It is not Walker, but the majority, that "misreads the scope of *Walker II*." (Maj. Op. at 16.) This Court's decision in *Walker II* that Walker had established cause and prejudice to overcome procedural default meant that he simultaneously satisfied two of the three components of his *Brady* claim, and the Court's other determinations were necessarily dispositive of the third component. Therefore, the district court's decision to disregard this Court's prior determinations of law and fact violated the law of the case doctrine, or more specifically, the mandate rule.

## A.

In *Strickler v. Greene*, 527 U.S. 263, 282 (1999), the Supreme Court stated that the elements required to demonstrate procedural default—cause and prejudice—"parallel two of the three components of the alleged *Brady* violation itself," namely suppression and prejudice. *Accord Banks v. Dretke*, 540 U.S. 668, 691 (2004). The *Banks* decision not only reaffirmed the observation laid out in *Strickler*, but also elaborated on the overlap between these two tests:

> Corresponding to the second *Brady* component (evidence suppressed by the State), a petitioner shows "cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the compass of the "cause and prejudice" requirement exists when the suppressed evidence is "material" for *Brady* purposes.

*Id.*

After finding that Walker established cause and prejudice to excuse the procedural default of his *Brady* claim, Judge Floyd, writing for the majority in *Walker II*, concluded "that an evidentiary hearing on the merits of [Walker's] Bianca *Brady* claim is appropriate," and thus remanded the case to the district court for an evidentiary hearing. 195 Fed. App'x at 177. As I pointed out in my concurrence, "Walker's showing of cause and prejudice is not merely sufficient to overcome the procedural default, but also to satisfy the second and third elements of a *Brady* claim" and ultimately to establish a *Brady* violation. *Id.* at 179 (Gregory, J., concurring).

> As observed in *Banks*, a defendant who shows cause and prejudice to excuse a procedural default simultaneously satisfies the second and third elements of a *Brady* claim—evidence suppressed by the state and prejudice, respectively. *See Banks*, 540 U.S. at 691. Without question, the first *Brady* element—the suppressed evidence is favorable to the accused—is satisfied here. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (setting forth the elements of a *Brady* claim). Indeed, the undisclosed reports contain powerful impeachment material, which calls into question the veracity of Bianca's testimony. Thus, I believe that the conclusion that a *Brady* violation occurred flows from the finding of cause and prejudice.

*Id.* (Gregory, J., concurring).

Even the dissent indicated that Judge Floyd's conclusion as to Walker's showing of cause and prejudice "means that Walker has satisfied two of the three elements of a successful *Brady* claim," suppression and prejudice. *Id.* at 184 n.4 (Williams, J., dissenting).

The majority therefore remands for the district court to determine only whether Walker has shown the third element of a *Brady* claim; that is, that "the evidence at issue is favorable to [Walker], either because it is exculpatory or because it is impeaching." Although the majority strangely refrains from addressing this legal question, its statement that "[t]he withheld reports provide persuasive evidence that Bianca did not see the shooter the night of [her father's] murder," answers this question in the affirmative. In essence, then, as suggested by Judge Gregory's concurrence, the majority opinion results in an inevitable grant of Walker's § 2254 petition.

*Id.* (Williams, J., dissenting) (internal citations omitted).

Thus, both the concurrence and dissent in *Walker II* correctly noted that, under *Strickler* and *Banks*, Judge Floyd's majority opinion necessarily meant that Walker had satisfied the suppression and prejudice components of the *Brady* claim itself. *See* 195 Fed. App'x at 179 (Gregory, J., concurring), 184 n.4 (Williams, J., dissenting). The majority wholly disregards these two opinions, instead altering this Court's analysis of the facts when the facts have not changed. While the majority affords no weight to the clear views of a majority of the panel members in *Walker II* on the significance of that case's holding, surely it does not question the intent of Judge Floyd's majority opinion. Judge Floyd simply found an evidentiary hearing to be appropriate, providing the Government with an opportunity to produce evidence different on Walker's *Brady* claim than what had been shown before this Court. Indeed, the majority states that "[t]here was no evidence from the Commonwealth . . . regarding what information was or was not given to defense counsel on the issues raised." (Maj. Op. at 18.) Given that no evidence was ultimately presented that was significantly different from that before this Court in *Walker II*, the district court was not free to depart from this Court's prior determinations.

At oral argument before this Court, the Warden repeatedly asserted that Walker chose to not put evidence on at the evidentiary hearing. This argument is incorrect at best, as Walker did introduce evidence. The argument also demonstrates the affront to fairness that has occurred here. Walker proved his *Brady* claim before this Court in *Walker II*. In a light most generous to the Warden, the evidentiary hearing was granted either to allow the Government to bring new evidence to light in order to avoid summary judgment in favor of Walker or to decide only the issue of favorability. However, the effect of the majority's approach in this case is that Walker was forced to relitigate his claim until the Warden prevailed.

Furthermore, irrespective of the import of the holdings in *Strickler* and *Banks*, the express determinations in *Walker II* conclusively establish the suppression and prejudice components of Walker's *Brady* claim. With regard to the suppression component, this Court found that "the prosecution failed to disclose *Brady* material" when "the Commonwealth knew of, but failed to disclose, police reports that contain evidence which challenges the credibility of Bianca Taylor's alleged eyewitness testimony." *Walker II*, 195 Fed. App'x at 172. With regard to the prejudice component, this Court concluded that "[g]iven the dearth of physical evidence and the centrality of Bianca's testimony, the withheld evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 177 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). This conclusion in fact mirrors the governing standard for demonstrating prejudice for purposes of a *Brady* violation. *See Kyles*, 514 U.S. at 435.

While the majority opinion in *Walker II* did not expressly state that the third component of the *Brady* claim—favorability—had been demonstrated by Walker, the Court's findings leave no doubt that the favorability component had been established.* The opinion found that the with-

---

*Both the concurrence and dissent in *Walker II* recognized that the determinations by the majority opinion necessarily meant that the favora-

held police reports "contain evidence which challenges the credibility of Bianca Taylor's alleged eyewitness testimony," 195 Fed. App'x at 172, and "provide compelling evidence suggesting that Bianca never saw the intruder the night of the murder and that she based her identification of Walker solely on the intruder's voice," *id.* at 173. The opinion concluded: "As such, the withheld documents would have provided substantial evidence impeaching Bianca's trial testimony that she saw the person who shot her father." *Id.* at 174. According to *Strickler*, this type of impeachment evidence is, by definition, "favorable to the accused" for purposes of proving a *Brady* violation. *See* 527 U.S. at 281-82.

For its part, the majority modifies the previous determinations made by this Court by claiming that in *Walker II*, we were merely accepting Walker's pleadings as true for purposes of determining whether his procedural default was excused, rather than evaluating the facts as would be done for purposes of evaluating the *Brady* claim itself. The majority even goes so far as to declare that *Walker II expressly* assumed the truth of Walker's assertions. This is plainly not the case. The opinion in *Walker II never made such assumption*, explicitly or implicitly. Instead, the Court "[v]iew[ed] the facts of the case at bar through the lens of *Banks*." 195 Fed. App'x at 172.

In arriving at its interpretation of *Walker II*, the majority conflates the standard a court uses in ruling on a motion to dismiss with the standard it uses to determine whether a petitioner has put on evidence to overcome procedural default. The *Banks* decision is particularly instructive in this regard, for as in *Banks*, the lower court here dismissed Walker's *Brady* claim on account of procedural default. *See* 540 U.S. at 689, 691. Yet the *Banks* decision acknowledged that the

---

bility component had been satisfied. *See* 195 Fed. App'x at 179 (Gregory, J., concurring), *id.* at 184 n.4 (Williams, J., dissenting).

standard for showing cause and prejudice to excuse proce-
dural default is *the same* as that for establishing the underly-
ing *Brady* claim. *See id.* at 691 ("[I]f Banks succeeds in
demonstrating 'cause and prejudice,' he will at the same time
succeed in establishing the elements of his . . . *Brady* . . .
claim.") Here, while the district court had not held an eviden-
tiary hearing on the issue of procedural default, we reached
our decision based on evidence *beyond the pleadings*, includ-
ing the affidavits of counsel and police officers involved in
the investigation of the Beale murder. Thus, when this Court
"[v]iew[ed] the facts of the case at bar through the lens of
*Banks*," 195 Fed. App'x at 172, it did not, and indeed could
not, view the facts in the light most favorable to Walker.

B.

Because the majority misinterpreted the effect of this
Court's findings and conclusions in *Walker II* on the merits of
Walker's *Brady* claim, it failed to determine whether the dis-
trict court violated the mandate rule by denying Walker's
motion for summary judgment and holding an evidentiary
hearing on the *Brady* claim. "Few legal precepts are as firmly
established as the doctrine that the mandate of a higher court
is 'controlling as to matters within its compass.'" *United
States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague
v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). According
to *Bell*, "[b]ecause this mandate rule is merely a specific
application of the law of the case doctrine, in the absence of
exceptional circumstances, it compels compliance on remand
with the dictates of a superior court and forecloses relitigation
of issues expressly or impliedly decided by the appellate
court." *Id.* (internal quotation marks and citations omitted);
*see also Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th
Cir. 1988) ("[T]he [law of the case] doctrine applies both to
questions actually decided as well as to those decided by 'nec-
essary implication' . . . ."). Thus, on remand "a district court
must, except in rare circumstances, implement both the letter
and spirit of the . . . mandate, taking into account [our] opin-

ion and the circumstances it embraces." *Bell*, 5 F.3d at 66-67 (alteration in the original) (internal quotation marks and citations omitted). The majority fails to enforce this law.

Even though the majority in *Walker II* "remanded for an evidentiary hearing on Walker's Bianca *Brady* claim," 195 Fed. App'x at 177, the district court was bound by the findings and conclusions in that opinion, which by necessary implication required the granting of summary judgment in favor of Walker. *Cf. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (concluding that this Court's determination that defendant could state a claim against plaintiff under a statute necessarily implied that the statute applied to plaintiff, and thus the district court did not err in refusing to allow plaintiff to argue on remand that the statute was inapplicable). "A mandate from [an appellate] court ordering a new trial does not preclude the district court from entering summary judgment if all of the appropriate requirements are met." *Perlmutter v. U.S. Gypsum Co.*, 54 F.3d 659, 662 (10th Cir. 1995) (alteration in the original) (internal quotation marks and citation omitted); *Publishers Res., Inc. v. Walker-Davis Pubs., Inc.*, 762 F.2d 557, 559-60 (7th Cir. 1985).

Nor are there "exceptional circumstances" in this case that would compel the district court to disregard our findings and conclusions. The Fourth Circuit has identified three categories of exceptional circumstances: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Sejman*, 845 F.2d at 69 (internal quotation marks and citation omitted); *accord United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999). The second and third of these circumstances are plainly inapplicable here, and thus the only circumstance that could potentially apply is the first: that the subsequent evidentiary hearing produced substantially different evidence on Walker's *Brady* claim. But

as other courts have recognized, the "substantially different evidence" exception "does not apply where a prior appeal has not left the issue open for decision." *Lyons v. Fisher*, 888 F.2d 1071, 1075 (5th Cir. 1989) (internal quotation marks and citation omitted); *see also United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991). That is because "[i]f, by the simple expedient of flaunting the law of the case, a trial court which should have deferred to an appellate court's resolution of an issue could proceed to address the issue anew, then the doctrine would disappear into thin air." *Rivera-Martinez*, 931 F.2d at 151.

Because our opinion in *Walker II* was dispositive of Walker's *Brady* claim, the district court erred in refusing to grant summary judgment in favor of Walker and ultimately denying his habeas petition. Furthermore, even assuming that the evidence adduced at the evidentiary hearing was "substantially different" than the record in *Walker II*, the "substantially different evidence" exception cannot apply because the district court was foreclosed from relitigating the findings and conclusions of this Court. To reach a different result, the majority modifies previous determinations by this Court, and I must dissent on this basis.

## II.

Walker alternatively contends that even if the district court was not strictly bound by the legal determinations of this Court, the district court nevertheless erred in finding that Walker had not established his *Brady* claim. Specifically, Walker contends that "[t]he factual record developed at the evidentiary hearing in district court did not differ in any material way from the factual record before this Court when it concluded that the prosecution suppressed material, favorable evidence." (Petr.'s Br. 38.) Given this, Walker argues that the district court was not free to come to the opposite legal conclusions as those reached by this Court. The majority dismisses this argument in one brief paragraph, maintaining that

there was no previous merits determination by this Court and that Walker's argument "subverts the burden of proof."

First, as discussed above, there was a previous merits determination by this Court in *Walker II* on Walker's *Brady* claim. Second, Walker's argument does not shift the burden of proof. Rather, Walker simply sets out an application of the law of the case doctrine, which the majority does not address. Instead, the majority charts a new course and concludes that the findings and decision of the district court were fully supported by the record.

In essence, Walker's argument is a specific application of the law of the case doctrine. Other circuits, relying on the law of the case doctrine, have held that a district court is not free to depart from a circuit court's legal conclusions where the evidence developed at the district court level was "substantially similar" to the evidence considered by the circuit court in a previous appeal. *See, e.g.*, *Africa v. City of Philadelphia* (*In re City of Philadelphia Litig.*), 158 F.3d 711, 720-22 (3d Cir. 1998); *Williams v. City of Dothan*, 818 F.2d 755, 757-58 (11th Cir. 1987). Based on the Fourth Circuit's application of the law of the case doctrine as I set out above, this Court should adopt this particular holding as well. Because the evidence before this Court and the district court was "substantially similar" and undoubtedly established all elements of Walker's *Brady* claim, the district court erred in denying Walker's habeas petition. In finding otherwise, the majority advances several arguments which I need not address because each relies on evidence that was considered and rejected by this Court in *Walker II*.

## III.

In this case, the district court violated the mandate rule and erred in its conclusions as to all elements of Walker's *Brady* claim. I would, accordingly, reverse the decision of the district court and remand with instructions to issue the writ of

habeas corpus and grant Walker a new trial. I am troubled by the majority's choice to reject the conclusions previously made by this Court in *Walker II*. When, as here, actual innocence is at issue in a capital case involving such scant physical corroboration, justice requires that we adhere to the well-established law of the case doctrine and specifically, the mandate rule. Thus, I dissent.