The **NIELSEN COMPANY (US), LLC,** Plaintiff,

v.

**COMSCORE, INC.,** Defendant.

**Civil Action No. 2:11cv168.**

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 19, 2011.

Walter D. Kelley, Jr., Esq., Heather N. Fugitt, Esq., Joe Chuan–Che Liu, Esq., Steven J. Corr, Esq., Tara Zurawski, Esq., Tharan G. Lanier, Esq., for Plaintiff.

Brian G. Bieluch, Esq., Christina Olson, Esq., Courtney R. Forrest, Esq., Erica N. Anderson, Esq., Katharine C. MacDonald, Esq., Kevin B. Collins, Esq., Paul A. Ainsworth, Esq., Paul J. Wilson, Esq., Peter A. Swanson, Esq., Richard L. Rainey, Esq., Stephen E. Noona, Esq., for Defendant.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is currently before the Court on a motion filed by defendant comScore, Inc. to dismiss Counts I, V, and part of Count IX of plaintiff The Nielsen Company (US), LLC's First Amended Complaint and a motion filed by plaintiff to dismiss Counterclaim XI of defendant's Partial Answer and Counterclaims to the First Amended Complaint. The motions have been fully briefed, and are ripe for decision. Although defendant has requested a hearing on its motion to dismiss, after examination of the briefs and the record, the Court has determined that a hearing

on the motion is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. Fed.R.Civ.P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court **DENIES** defendant's motion to dismiss Counts I, V, and part of Count IX of plaintiff's First Amended Complaint and **DENIES** plaintiff's motion to dismiss defendant's Counterclaim XI.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

Plaintiff's First Amended Complaint alleges that defendant's products, services, systems, and/or methods infringe five patents (the "patents-in-suit") that Plaintiff owns relating to software that monitors, collects, measures, and analyzes personal computer usage, including accessing content on the Internet. Specifically, plaintiff alleges direct infringement of United States Patent Number 6,115,680 (the '680 patent) and both direct and indirect infringement of United States Patent Numbers 6,418,470 (the '470 patent), 7,376,722 (the '722 patent), 7,386,473 (the '473 patent), and 7,613,635 (the '635 patent).

Plaintiff filed its initial complaint in this matter on March 15, 2011. Docket No. 1. Defendant filed a motion to dismiss plaintiff's original complaint pursuant to Rule 12(b)(6) on May 2, 2011. Docket No. 28. Instead of filing a response to defendant's motion, plaintiff filed its First Amended Complaint on May 11, 2011. Docket No. 31. Defendant filed its motion to dismiss plaintiff's First Amended Complaint and its Partial Answer and Counterclaims to the First Amended Complaint on May 31, 2011.[2] Docket Nos. 36 & 38. Plaintiff filed its motion to dismiss defendant's Counterclaim XI and a Partial Answer to Defendant comScore, Inc.'s Counterclaims on June 23, 2011. Docket Nos. 44 & 48. As noted above, the motions were fully briefed, and defendant filed its request for a hearing on its motion to dismiss on June 23, 2011. Docket No. 47.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

■ Rule 8(a) of the Federal Rules of Civil Procedure provides in relevant part that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the

---

1. The facts recited herein are drawn from plaintiff's First Amended Complaint, defendants' Partial Answer and Counterclaims, and the patents attached to them. These factual allegations are assumed true for the purpose of deciding the instant motions, but do not constitute factual findings for any other purpose. *See, e.g. Nemet Chevrolet, Ltd. v. Consumeraffairs.com,* 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

2. When a party files a Rule 12(b)(6) motion to dismiss contemporaneously with or after its answer to a complaint or counterclaim, the motion typically is properly construed as a motion for judgment on the pleadings pursu-

ant to Rule 12(c). *See Walker v. Kelly,* 589 F.3d 127, 139 (4th Cir.2009) (citing *Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir.2002) & *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)). In this matter, however, the parties' respective Partial Answers only contain allegations responding to the claims and counterclaims that they have not moved to dismiss. *See* Docket Nos. 38 & 48. Consequently, the instant motions appear to have been properly made pursuant to Rule 12(b)(6). This distinction has, in any case, no practical effect on the court's adjudication of the instant motions, because "a motion under Rule 12(c) ... is assessed under the same standard that applies to a Rule 12(b)(6) motion." *Walker,* 589 F.3d at 139 (citing *Edwards,* 178 F.3d at 243).

pleader is entitled to relief." Fed.R.Civ.P. 8(a). Rule 12(b)(6) permits a defendant to move for dismissal of a claim against it if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). In assessing such a motion, the court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000).

■ A complaint must be dismissed, however, if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *accord Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir.2008). This means that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citation omitted). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

■ Moreover, while the court must construe the facts in the light most favorable to the plaintiff when considering a motion to dismiss, the court is not obligated to accept the complaint's legal conclusions. *See Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991). Accordingly, dismissal pursuant to Rule 12(b)(6) is appropriate when, upon considering the facts set forth in the complaint as true and construing the facts in the light most favorable to the non-moving party, there is no basis on which relief can be granted. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ "In considering a motion to dismiss in a patent case, the district court applies [the] substantive law of the relevant circuit, not that of the Federal Circuit." *Adiscov, LLC v. Autonomy Corp.*, 762 F.Supp.2d 826, 829 (E.D.Va.2011) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed.Cir.2007)). However, in the absence of a post-*Twombly/Iqbal* decision by the United States Court of Appeals for the Fourth Circuit on a Rule 12(b)(6) motion to dismiss in a patent case, other courts in this District have relied on the United States Court of Appeals for the Federal Circuit's decision in *McZeal* in considering motions to dismiss in patent cases. *See id.* at 829–30; *accord Taltwell, LLC v. Zonet USA Corp.*, Civ. Action No. 3:07cv543, 2007 WL 4562874, at * (E.D.Va. Dec. 20, 2007).

> In *McZeal*, the Federal Circuit concluded that a Complaint stating [a] patent infringement cause of action is sufficiently pled under the *Twombly* standard if it: (1) asserts that the plaintiff owns the patent at issue; (2) names the defendant[ ]; (3) states that the defendant infringed the patent; (4) describes, in general terms, the means by which the patent was infringed; (5) and identifies the specific parts of patent law that are implicated. Fulfilling each of these elements is sufficient to put the defendant on notice and permit the action to survive a Rule 12(b)(6) motion.

*Taltwell*, 2007 WL 4562874 at *14.

### B. 35 U.S.C. § 271

■ Patent infringement is defined by 35 U.S.C. § 271, which provides in relevant part:

> (a) Except as otherwise provided in this title, whoever without authority makes,

uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271. Section (a) relates to claims of direct infringement, whereas sections (b) and (c) articulate two varieties of indirect infringement: infringement by inducement and contributory infringement, respectively. "In order to prevail on an indirect infringement claim, a plaintiff must first demonstrate direct infringement [by someone other than the defendant], then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'" *Mallinckrodt Inc. v. E–Z–EM Inc.*, 670 F.Supp.2d 349, 354 (D.Del.2009) (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed.Cir.2004)).

█ As noted above, § 271(c) requires a plaintiff claiming contributory infringement to show that the defendant's allegedly infringing "component" is a "material part of the [allegedly infringed] invention" and is not a "staple article" that has a "substantial noninfringing use." 35 U.S.C. § 271(c). Specifically, "'[i]n order to suc-

ceed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing use.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed.Cir.2009) (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed.Cir. 2005)), *cert. denied sub nom. Microsoft Corp. v. Lucent Techs., Inc.*, —— U.S. ——, 130 S.Ct. 3324, 176 L.Ed.2d 1240 (2010).

## III. ANALYSIS

### A. Count I

#### 1. The Claimed Method

█ Count I of plaintiff's First Amended Complaint alleges that defendant directly infringes at least independent claim 12 of the '680 patent under 35 U.S.C. § 271(a). Docket No. 31 ¶¶ 13–15. Claim 12 of the '680 patent claims:

A monitoring method, comprising the steps of:

logging predetermined events by a plurality of local computer use meters installed in user computer machines, wherein said log of predetermined events identifies character strings reflecting on-line activity;

storing said log of predetermined events by each use meter in an associated user computer machine;

receiving and storing said log of predetermined events by a central processing station from said plurality of computer use meters;

accessing, processing and generating reports based on the stored predetermined events by a database management system; and

wherein said processing station is linked to said plurality of computer use meters.

U.S. Patent No. 6, 115, 680 col. 121.61–col. 131.8 (filed March 2, 1998).

### 2. Direct Infringement Involving Multiple Actors

Count I claims that defendant infringes the '680 patent "by virtue of at least its current and past efforts, in connection with" one or more of its numerous "products, services, systems and/or methods ... to make, use, sell, and/or offer to sell the systems and methods disclosed and claimed in the '680 patent." Docket No. 31 ¶ 11. Specifically, Count I claims that defendant infringes both by itself "by virtue of [its] hardware and software performing or dictating the performance of each of the claimed method's steps" and jointly with third parties "by virtue of [its] exercise and control or direction over each of the claimed method's steps." *Id.* ¶¶ 12–13.

Federal Circuit jurisprudence permits a finding of direct infringement only where the performance of every step of a claimed method is properly attributable to a single defendant, whether by virtue of the defendant actually performing every such step itself, exercising control or direction over the performance of every such step by others, or a combination of the two. *See* Docket No. 37 at 9–12 (discussing, *inter alia,* the Federal Circuit's decisions in *Muniauction, Inc. v. Thomson Corp.,* 532 F.3d 1318 (Fed.Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1585, 173 L.Ed.2d 677 (2009), and *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373 (Fed.Cir.2007)).

The Federal Circuit explained in *Muniauction* that its prior decision in *BMC Resources* "was founded on the proposition that direct infringement requires a single party to perform every step of a claimed

method," but also "recognized a tension between this proposition and the well-settled rule that 'a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf.'" 532 F.3d at 1329 (quoting *BMC Res.,* 498 F.3d at 1379). Consequently, the Federal Circuit held that "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party." *Id.* On the other hand, "mere 'arms-length cooperation' will not give rise to direct infringement by any party." *Id.* (quoting *BMC Res.,* 498 F.3d at 1381). The Federal Circuit further explained that "the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Id.* at 1330 (citing *BMC Res.,* 498 F.3d at 1379).

### 3. The Parties' Arguments

Defendant argues that plaintiff cannot maintain its direct infringement claim in Count I because the allegedly infringed method claimed in independent Claim 12 of the '680 patent includes steps that are performed not by defendant, but instead by "comScore panelists—individual users who have installed software that sends information about their computer usage to comScore." Docket No. 37 at 6. Defendant specifically argues that since "the 'logging' and 'storing' steps" of the '680 patent must "be carried out by 'local computer use meters installed in user computer machines,'" it cannot be said to perform those steps itself. Docket No. 37 at 11. Defendant similarly argues that, since its Internet-user panelists are not under its

direction or control, but instead have, at most, an arms-length, software provider-software user relationship with it, defendant cannot be vicariously liable for the panelists' installation of defendant's software and/or performance of any of the steps of the claimed method, and thus cannot be liable for joint infringement. *Id.* at 11–12.

Plaintiff argues in response that Count I contains all of the requisite elements for a claim of direct infringement enumerated by the Federal Circuit and other courts in this District. Docket No. 43 at 6–7. Plaintiff further claims that defendant's arguments would impermissibly require the Court to make findings of fact contrary to the First Amended Complaint's factual allegations; namely, that no "user computer machine" performing the "logging" and "storing" steps of the claimed method is owned by or otherwise under the direction or control of defendant. *Id.* at 7–8. Plaintiff notes, by way of example, that in-house testing by defendant of its own allegedly infringing software would necessarily implicate defendant's own computer or computers performing the "logging" and "storing" steps. *Id.* at 8. Plaintiff cites the Federal Circuit's decision in *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1325–26 (Fed.Cir.2009), for the proposition that a defendant's own internal product testing can, by itself, constitute infringement. *Id.*

### 4. The Court's Discussion

At this early stage in this matter, in which discovery has only recently begun, and claim construction has not yet taken place, the Court cannot conclude that plaintiff has failed to state a claim for direct infringement of independent Claim 12 of the '680 patent. As plaintiff argues, its allegations in Count I appear to fulfill all of the pleading criteria set forth in *McZeal* and relied upon in *Taltwell* and

*Adiscov.* Those allegations, which must be taken as true at this stage, affirmatively allege that defendant infringes Claim 12 both by its own actions and by exercising control or direction over the actions of others in performing the steps of the claimed method. For the reasons stated more fully below, both theories of direct infringement are, at the very least, plausible.

### a. Direct Infringement by Defendant Alone

The premature nature of defendant's motion to dismiss Count I is perhaps best demonstrated by its own rebuttal brief, in which defendant argues that, "as a matter of law, comScore cannot itself perform the 'logging' and 'storing' claim steps because the claim language expressly requires that these steps be performed by 'local computer use meters installed in *user computer machines.*" Docket No. 46 at 6. Defendant proceeds to claim that "comScore's own use of the panelist monitoring software (*e.g.*, in developing or testing the software) would not involve a 'user computer machine,' and thus would not satisfy the claim language." *Id.*

Defendant's claims in this connection, however, are not legal argument; instead, they appear to be an attempted construction of the term "user computer machine" as that term is used in the '680 patent. Even if such claim construction were permissible at this juncture—which it is not—the Court cannot help but note in this connection that "user" is nowhere defined in the '680 patent in such a way as to preclude defendant itself (or defendant's employees or agents) from being considered "users." In other words, nothing in the '680 patent appears to *require* that "users" be independent third parties. It follows, therefore, that defendant's computers, or those under its direction or control, are not, as a matter of law, precluded

from being considered "user computer machines" within the meaning of Claim 12 on which the allegedly infringing "panelist monitoring software" could be installed and used.

### b. Joint Direct Infringement by Defendant and Others

The analysis is similar with regard to plaintiff's joint infringement theory. Defendant claims that the First Amended Complaint's factual allegations concede that defendant's relationship with third-party panelists was an arms-length one between software provider and software user, which would not render defendant vicariously liable for such panelists' actions under applicable legal precedent. Docket No. 46 at 6–9. However, even assuming that claim were correct, the allegations of joint infringement in Count I are not expressly limited to third-party panelists. Eliminating one potential category of joint infringers is not the same thing as demonstrating the absence of other potential categories, such as, for example, an independent contractor software company hired by defendant to conduct testing of defendant's allegedly infringing software.

### c. Conclusion

Discovery in this matter may well show that "panelist monitoring software" was never actually installed or used on any computer that defendant owned, or over which it otherwise exercised direction or control. That, however, is not a matter that can be disposed of at this early stage. Consequently, because Count I of plaintiff's complaint plausibly alleges a claim of direct infringement, both individually and jointly, of at least independent Claim 12 of the '680 patent, defendant's motion to dismiss Count I must be denied.

## B. Count V

### 1. The Claimed Systems

■ Count V of plaintiff's First Amended Complaint alleges that defendant's "customers directly infringe at least independent claims 13 and 17 of the '722 patent" under 35 U.S.C. § 271(a), and that defendant indirectly infringes the '722 patent under 35 U.S.C. § 271(b) and (c). Docket No. 31 ¶¶ 41–43. Claim 13 of the '722 patent claims:

A system for measuring and analyzing multiple data sources over a communications network in order to ascertain information about use of one or more resources linked to said communications network, said system comprising:

a first group of one or more monitored resources, comprising resource servers;

a second group of one or more monitored resources, comprising resource servers;

a data collection and processing means for receiving a data source for said first group of one or more monitored resources, and for receiving a further data source for said second group of one or more monitored resources, wherein the further data source and the data source collected by a collection server means are processed by a processing server means in the data collection and processing means to calibrate a value based on the data source and the further data source; and

reporting means for displaying said data source and said further data source as a combined data source to interested parties so as to ascertain usage information on one or more resources;

wherein in relation to said further data source for said second group, interactions and resource requests of each of the monitored resources of said second group, entered on respec-

tive user interface means, are measured and recorded and sent to collection server means, the further data source is based on interactions from said monitored resources of said second group;

wherein the further data source is also based on interactions from said monitored resources in relation to one or more unmonitored resources, and wherein the value is an error rate which is subsequently applied to the further data source so as to determine an estimate of equivalent interactions of total resources with respect to the one or more unmonitored resources;

wherein said processing server means calculates a weighting factor based on a number of resources in the second group of one or more monitored users and a total number of resources expected to have access to one or more resources available through said communications network.

U.S. Patent No. 7,376,722 col. 141.40–col. 151.15 (filed August 7, 2000). Claim 17 of the '722 patent claims:

A system for measuring and analyzing multiple data sources over a communications network in order to ascertain information about use of one or more resources linked to said communications network, said system comprising:

a first group of one or more monitored resources, comprising resource servers;

a second group of one or more monitored users;

a data collection and processing means for receiving a data source for said first group of one or more monitored resources, and for receiving a further data source for said second group of one or more monitored users, wherein the further data source and the data source collected by a collection server means are processed by a processing server means in the data collection and processing means to calibrate a value based on the data source and the further data source; and

reporting means for displaying said data source and said further data source as a combined data source to interested parties so as to ascertain usage information on one or more resources;

wherein in relation to said further data source for said second group, interactions and resource requests of each of the monitored users of said second group, entered on respective user interface means, are measured and recorded and sent to collection server means, the further data source is based on interactions from said monitored users of said second group in relation to one or more resources;

wherein the further data source is also based on interactions from said monitored users in relation to one or more unmonitored resources, and wherein the value is an error rate which is subsequently applied to the further data source so as to determine an estimate of equivalent interactions of total users with respect to the one or more unmonitored resources;

wherein said processing server means calculates a weighting factor based on a number of users in the second group of one or more monitored users and a total number of users expected to have access to one or more resources available through said communications network.

'722 Patent col. 151.24–col. 161.11.

## 2. Direct and Indirect Infringement by "Use" of Systems

Count V claims that defendant's customers directly infringe the '722 patent by using defendant's "products, services, systems and/or methods," thus "put[ting] the

claimed invention of at least independent claims 13 and 17 of the '722 patent into use." Docket No. 31 ¶ 41. Count V also claims that defendant "is liable for actively inducing infringement of the '722 patent" by "advertis[ing] and market[ing] [its] products, services, systems, and/or methods ... on its website with the specific intent that [its] customers should infringe the '722 patent." *Id.* ¶ 42. Count V further claims that defendant "is liable for contributory infringement of the '722 patent" because it "offers to sell and/or sells software components that have no substantial noninfringing use to [defendant]'s customers ... knowing the same to be a material part of the invention especially made or especially adapted for use in an infringement of the '722 patent." *Id.* ¶ 43.

A recent Federal Circuit decision explained how "use" of claimed systems such as those claimed in independent Claims 13 and 17 of the '722 patent can constitute direct infringement. "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed.Cir.2011). Although the Federal Circuit reiterated in that recent decision its prior holding in *BMC* that "[d]irect infringement requires a party to perform or use each and every step or element of a claimed method or product," *BMC Res.*, 498 F.3d at 1378, it explained that an alleged infringer need not "exercise physical or direct control over each individual element of the system" that it is using, but instead need only have "the ability to place the system as a whole into service." *Centillion*, 631 F.3d at 1284.

### 3. The Parties' Arguments

#### a. Direct Infringement by Defendant's Customers

Defendant first argues that its customers do not directly infringe Claims 13 and 17 of the '722 patent "because they cannot possibly put into service [defendant]'s collection of data from the panelists—one of the alleged parts of the accused system." Docket No. 37 at 14. Since, according to defendant, its customers perform, at most, only some of the steps of the claimed systems, they cannot be found to be directly infringing the '722 patent. Furthermore, defendant argues that the absence of such direct infringement by its customers also precludes a finding of indirect infringement by defendant, either contributory or by inducement, because such a finding can only be predicated on a finding of direct infringement by another. *Id.* at 13–14 (citing *Dynacore*, 363 F.3d at 1272).

Plaintiff argues in response, much as it did with respect to Count I, that Count V contains all of the requisite elements for its claim of indirect infringement against defendant. Docket No. 43 at 12–13. Plaintiff again argues that defendant's position is impermissibly predicated on factual claims contrary to the First Amended Complaint's factual allegations; namely, that it is impossible for defendant's customers to perform all of the steps of the claimed systems. *Id.* at 13–14. Plaintiff notes that defendant does not specify any particular elements of the claimed systems that cannot be performed by defendant's customers. *Id.* Thus, because plaintiff "has adequately pled that [defendant]'s customers 'use' the claimed system, it is unnecessary, at this stage, to consider factual questions regarding joint infringement in the event the Court finds that the customers do not use the claimed system." *Id.* at 14. Plaintiff also notes that the Federal Circuit's decision in *Centillion* is potentially consistent with plaintiff's theory of direct infringement by defendant's customers, because the Federal Circuit concluded in that case "that the provider's

*customers* (end users of a telephone company's service for obtaining call and billing data) used the [allegedly infringed] system." *Id.* (citing *Centillion,* 631 F.3d at 1284).

Defendant replies in rebuttal that the "data collection and processing means" included in independent Claims 13 and 17 can only be *defendant's* collection and processing of data from its panelists. Docket No. 46 at 10. Thus, defendant claims, that part of the claimed systems cannot be unilaterally "used" by defendant's customers. *Id.*

### b. Indirect Infringement by Defendant

The Court now turns from plaintiff's theory of direct infringement of the '722 patent by defendant's customers to plaintiff's theories of indirect infringement by defendant itself. Defendant claims that Count V is inadequate because it (1) "does not identify the 'software components' that [defendant] allegedly 'offers to sell and/or sells' to third parties" and (2) "does not plead any *facts* concerning whether the unidentified components are material parts of the patented invention and are not staple articles of commerce suitable for substantial non-infringing use—two of the requirements of the statute." Docket No. 37 at 17 (citing, *inter alia,* 35 U.S.C. § 271(c)).

Plaintiff responds that it identifies by name several of defendant's products in the First Amended Complaint in connection with its infringement claims. *See* Docket No. 43 at 16 (quoting Docket No. 31 ¶¶ 35, 41, 43, 64, 70 & 72). Plaintiff also argues that its allegations that defendant's allegedly infringing "software components" are sold or offered for sale "in connection with" the enumerated products is sufficient under any pleading standard employed by any district court, including the comparatively lenient standard employed by other courts in this District in *Taltwell* and *Adis-*

*cov. Id.* at 16–17. With regard to the issues of materiality and a substantial non-infringing use, plaintiff repeats its argument that it must do no more at this stage than affirmatively allege that those statutory requirements are met, noting that neither *Twombly* nor *Iqbal* involved claims of patent infringement. Docket No. 43 at 18–20.

Defendant argues in rebuttal that identifying various products by name is insufficient because, under 35 U.S.C. § 271(c), defendant "may be liable only for the sale or offer for sale of 'a *component* of a patented machine' or 'a *material or apparatus*' that a third party could use 'in practicing a patented process.'" Docket No. 46 at 12 (quoting 35 U.S.C. § 271(c)). Defendant goes on to claim that, since plaintiff fails to specify the *components* of the identified products that allegedly infringe the '722 patent, the First Amended Complaint provides defendant insufficient notice of the manner in which its products allegedly infringe that patent. With respect to materiality and substantial noninfringing use, defendant points out the Supreme Court's statement in *Iqbal* that the pleading standard previously articulated in *Twombly* applied to all civil actions, and did not except from that statement patent infringement actions. *Id.* at 13–15.

### 4. The Court's Discussion

### a. The Applicable Standard of Review

There currently exists uncertainty regarding the proper standard under which district courts should evaluate the sufficiency of claims of indirect infringement. This uncertainty is due to the apparent tension between the more stringent pleading requirements articulated by the Supreme Court in *Twombly* and *Iqbal* and the less stringent language of Form 18 of the Federal Rules of Civil Procedure, the continued sufficiency of which was con-

firmed by the Federal Circuit in its post-*Twombly* (but pre-*Iqbal*) decision in *McZeal. See, e.g., Realtime Data, LLC v. Morgan Stanley*, 721 F.Supp.2d 538, 544 (E.D.Tex.2010) ("Because Form 18 does not expressly address indirect infringement claims, the pleading requirements of indirect infringement claims are unclear.") (adopting Report & Recommendation of United States Magistrate Judge). This Court has previously addressed the dispute created by such tension, concluding that "[s]ince the Federal Rules state that compliance with the forms is sufficient, and the Supreme Court's decisions in *Twombly* and *Iqbal* could not have amended the Federal Rules, a complaint alleging literal infringement that tracks Form 18 is sufficient to withstand a motion to dismiss under Rule 12(b)(6)." *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F.Supp.2d 667, 675 (E.D.Va.2011) (Davis, J.).

The foregoing analysis in *W.L. Gore* related only to claims of direct, literal infringement. Here, of course, the First Amended Complaint includes claims of indirect infringement. The relevance of *McZeal* and Form 18 to such claims of indirect infringement has also been the subject of much dispute. *See, e.g.*, Rex Mann, *What the Federal Rules of Civil Procedure Forms Say About Twombly and Iqbal: Implications of the Forms on the Supreme Court's Standard*, 41 U. Mem. L.Rev. 501, 535–547 (2011). Several other district courts have expressly found Form 18 to be irrelevant to indirect infringement claims, instead evaluating their sufficiency under the standards articulated in *Twombly* and *Iqbal*, without reference to Form 18's language. *See, e.g., Halton Co. v. Streivor, Inc.*, No. C 10–00655 WHA, 2010 WL 2077203, at *3 (N.D.Cal. May 21, 2010) (noting that "[o]n its face . . . Form 18 is silent as to any theory of patent infringement besides *direct* in-

fringement" and that "[n]owhere in Form 18 are theories and elements of induced infringement or contributory infringement referenced," and concluding on that basis "that plaintiff cannot use Form 18 as a shield against" a motion to dismiss); *Sharafabadi v. Univ. of Idaho*, No. C09–1043JLR, 2009 WL 4432367, at *5 & n. 7 (W.D.Wash. Nov. 27, 2009) (finding that the plaintiff had failed to state a claim for indirect infringement and noting that "[i]n making [that] determination, the court is mindful that Form 18 only addresses direct infringement, not indirect infringement"); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09–01531 RS, 2009 WL 2972374, at *2 (N.D.Cal. Sept. 14, 2009) ("Both types of indirect infringement include additional elements, none of which Form 18 even purports to address. In the absence of any other form that addresses indirect infringement and is made binding the courts through Rule 84, the Court must apply the teaching of *Twombly* and *Iqbal*."). This Court, consistent with the well-reasoned analyses of these other district courts, concludes that plaintiff's claims of indirect infringement must be evaluated under the standard set forth in *Twombly* and *Iqbal*, without reference to the language of Form 18, which only relates to claims of direct infringement.

### b. Direct infringement by "Use"

With regard to the issue of customer "use" of defendant's allegedly infringing systems, which forms the predicate direct infringement for plaintiff's theories of indirect infringement by defendant, discovery in this matter may well show that no customer actually uses, or is actually able to use, the "data collection and processing means" part of the claimed systems. This is not, however, a stage in this matter at which this Court may draw such a conclusion. Plaintiff has alleged that defendant's customers "use" the allegedly infringing

systems, and aptly notes the Federal Circuit's conclusion in *Centillion* that a customer could "use" an entire telecommunications network. Therefore, defendants cannot establish at this stage, without impermissibly delving into contested issues of fact, that its customers cannot "use" all of the elements of its allegedly infringing systems. Accordingly, the Court turns to the sufficiency of plaintiff's allegations regarding defendant's indirect infringement.

### c. The Sufficiency of Plaintiff's Factual Allegations

Even under *Twombly* and *Iqbal's* more stringent pleading standard, the Court cannot conclude that plaintiff has failed to state a claim for contributory infringement of independent Claims 13 and 17 of the '722 patent premised on direct infringement by defendant's customers. Count V appears to allege all of the requisite elements for such a claim of indirect infringement.

Plaintiff's factual allegations, which must be taken as true at this stage, claim that defendant's "customers directly infringe at least independent claims 13 and 17 of the '722 patent" by using the products enumerated in paragraph 35 of the First Amended Complaint. Docket No. 31 ¶¶ 35, 41. Plaintiff alleges that defendant "has had actual knowledge and constructive notice of the '722 patent at all relevant times," and provides a concrete example of an occasion on which defendant would have received such notice. *Id.* ¶¶ 36 & 40.

As noted above, " '[i]n order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing use.' " *Lucent*, 580 F.3d at 1320 (quoting *Cross Med. Prods.*, 424 F.3d at 1312); *accord* 35 U.S.C. § 271(c). Plaintiff's allegations regarding the additional elements required for contributory infringement—namely, the identification of a "component," the "materiality" of that component to the claimed invention, and the lack of a "substantial noninfringing use" for the component—directly test the boundaries of the pleading standard articulated in *Twombly* and *Iqbal.* Plaintiff's allegations in this regard are simply that defendant:

> offers to sell and/or sells software components that have no substantial noninfringing use to [defendant]'s customers in connection with its products, services, systems and/or methods in ¶ 35, knowing the same to be a material part of the invention especially made or especially adapted for use in an infringement of the '722 patent.

Docket No. 31 ¶ 43.

With regard to the "component" issue, the First Amended Complaint's allegation is admittedly somewhat circuitous. Plaintiff alleges that the infringing software components—which are not themselves identified by name—are offered for sale and/or sold "in connection with [defendant's] products, services, systems and or methods," which are identified by name and/or description in paragraph 35. *Id.* Such allegation does not necessarily claim that the allegedly infringing components are integrated into any of defendant's products, but merely that such components are somehow connected with such products. However, the Court cannot conclude that this formulation fails to provide defendant adequate notice of the manner in which it allegedly infringes the '722 patent. The First Amended Complaint identifies by name several of defendant's allegedly infringing products, and further describes the nature of the allegedly infringing products as "includ[ing] a

combination of panel and website server metrics." *Id.* ¶ 35. These allegations suffice, though minimally, to identify the nature of the allegedly infringing software components. Failure to identify such components by name does not alter this result; defendant may not even have a separate product name for such components.

With regard to the issues of "materiality" and "substantial noninfringing use," although the First Amended Complaint's allegations in this connection are admittedly spare, it is difficult to imagine a manner in which they could have been pled with greater *factual* detail. Put succinctly, what facts would there be to allege? A component either is or is not material to a system; plaintiff claims that the allegedly infringing software components are material to the systems in the '722 patent. Similarly, a component either has or does not have a substantial noninfringing use. Particularly in light of the necessarily negative nature of this allegation—i.e., that the accused components have *no* substantial noninfringing use—it is difficult to conceive how such an allegation could have been more *factually* detailed. This is not a case in which plaintiff has omitted any mention of these elements from its complaint. Instead, plaintiff has included all of the requisite elements to allege a claim for contributory infringement, and the Court cannot find such claim to be implausible at this stage in the matter.

### d. Conclusion

Applying the standard set forth in *Twombly* and *Iqbal*, it appears to the Court that plaintiff has adequately alleged direct infringement by defendant's customers and contributory infringement by defendant. Consequently, defendant's motion to dismiss Count V must be denied.

### C. Count IX

### 1. The Claimed Method

Count IX of plaintiff's First Amended Complaint alleges that defendant's "customers directly infringe at least independent claim 1 of the '635 patent," and that defendant indirectly infringes the '635 patent under 35 U.S.C. § 271(b) and (c). Docket No. 31 ¶¶ 70–72. Claim 1 of the '635 patent claims:

A method to monitor user events relating to a web page provided by a first server to clients requesting the web page via the Internet, the method comprising:

embedding a computer executable monitoring instruction in an HTML file which, when executed by a first client or a second client different from the first client accessing the HTML file, generates monitoring information concerning user events relating to the web page associated with the HTML file;

embedding a computer executable transfer instruction in the HTML file which, when executed by the first or second client, transfers the monitoring information to a data collection server;

responding to a request for the HTML file from the first client by downloading a copy of the requested HTML file via the Internet to the first client;

responding to a request for the HTML file from the second client by downloading a copy of the requested HTML file via the Internet to the second client; and

receiving a report from the data collection server that did not transfer the copy of the HTML file to either the first client or the second client, the report concerning the user events of

the first and second clients with respect to the copies of the HTML file. U.S. Patent No. 7,613,635 col. 251.33–col. 261.19 (filed December 29, 2006).

### 2. Direct and Indirect Infringement

Count IX claims that defendant's customers directly infringe the '635 patent because they "practice at least independent claim 1" of it "[b]y using the comScore products, services, systems and/or methods." Docket No. 31 ¶ 70. Count IX also claims that defendant "is liable for actively inducing infringement of the '635 patent" by "advertis[ing] and market[ing] [its] products, services, systems, and/or methods . . . on its website, with the specific intent that [its] customers should infringe the '635 patent." *Id.* ¶ 71. Count IX further claims that defendant "is liable for contributory infringement of the '635 patent" because it "offers to sell and/or sells software components that have no substantial noninfringing use to [defendant]'s customers . . . knowing the same to be a material part of the invention especially made or especially adapted for use in an infringement of the '635 patent." *Id.* ¶ 72.

### 3. The Parties' Arguments and the Court's Discussion

Defendant advances its arguments regarding Count IX's claim of contributory infringement, and plaintiff advances its responses, entirely in tandem with their respective arguments regarding Count V. *See* Docket No. 37 at 15–17; Docket No. 43 at 15–20; Docket No. 46 at 11–15. Consequently, the Court need not reiterate such arguments, or its discussion of their merits. For the same reasons stated above with respect to Count V, the Court finds that Count IX adequately alleges a plausible claim for contributory infringement, and defendant's motion to dismiss Count IX must be denied, resulting in defendant's motion to dismiss being denied in its entirety.

### D. Counterclaim XI

#### 1. The Counterclaim's Allegations

Counterclaim XI of defendant's Partial Answer and Counterclaims alleges that plaintiff "is liable for infringement of at least claims 1, 2, 6, 9–12, 20–22, 26, 36, and 37 of" defendant's U.S. Patent Number 7,685,275 "by virtue of at least [plaintiff's] current and past efforts, in connection with its proprietary filtering mechanisms used in connection with its 'Online Measurement' efforts, to make and use the systems, methods, and computer program products disclosed in the '275 patent." Docket No. 38 ¶ 55. Defendant excerpts language from plaintiff's website in describing the manner in which plaintiff's " 'Online Measurement' efforts monitor paid clicks for advertisements for various consumer sectors, and uses proprietary filtering mechanisms to remove clicks that are not legitimate." *Id.* ¶ 54.

#### 2. The Parties' Arguments

Plaintiff argues that defendant fails to satisfy the pleading requirements discussed above because Counterclaim XI "does not specify *any* products or services that allegedly infringe," noting that the *Adiscov* court dismissed a claim that alleged infringement only generally by the defendant's "legal discovery software and services." Docket No. 45 at 4 (discussing *Adiscov,* 762 F.Supp.2d at 830–32). Plaintiff points out that " 'Online Measurement' efforts" is a phrase of defendant's own coinage, which plaintiff nowhere uses to describe its products or services. *Id.* at 5. Plaintiff further claims that defendant's allegations in paragraphs 54 and 55 of its Partial Answer and Counterclaims do not identify any allegedly infringing product with sufficient specificity. *Id.* at 5–6.

604

Defendant responds that its direct infringement claim, which, pursuant to this Court's decision in *W.L. Gore,* may track the language of Form 18 without running afoul of Rule 12(b)(6), contains sufficiently descriptive details to survive plaintiff's motion to dismiss. Docket No. 49 at 4–6. Defendant also notes that its allegations in Counterclaim XI are markedly more descriptive than plaintiff's factual allegations in support of its contributory infringement claims discussed above. *Id.* at 6–7 n. 6. Defendant emphasizes that the allegation of a particular product name is not dispositive, especially where the infringing activity may be internal to a system, method, or computer program instead of a discrete product in and of itself. *Id.* at 6–7.

Plaintiff reiterates in rebuttal that the *Adiscov* court required greater specificity than defendant provides in this matter with respect to Counterclaim XI. Docket No. 50 at 5–6. Plaintiff also argues that permitting defendant's counterclaim to survive on the basis of a neologism of defendant's own manufacture (" 'Online Measurement' efforts") would give defendant license to engage in impermissibly exploratory discovery in the course of this matter. *Id.* at 7–8.

### 3. The Court's Discussion

There is no small measure of irony in the nature of plaintiff's motion to dismiss Counterclaim XI. Plaintiff, who repeatedly emphasizes the purportedly lenient pleading standard employed in *Taltwell* and *Adiscov* in connection with defendant's motion to dismiss its claims, now accuses defendant of deficiencies in factual detail. Although plaintiff's motion must, of course, be evaluated entirely independently of defendant's motion, the Court finds that the principles employed above in disposing of defendant's motion apply with equal force to plaintiff's motion.

As defendant correctly observes, paragraphs 54 and 55 contain detailed descriptions of the functionality of plaintiff's products and/or services that defendant believes infringe the '275 patent. That defendant is unable to identify a specific product name for the allegedly infringing activity is of no great moment, especially in light of defendant's observation that such activity may occur entirely within one of plaintiff's products and/or services, such that it would not be marketed or sold as a separate item meriting its own product name. Instead, the details contained in Counterclaim XI suffice, under this District's jurisprudence, to survive plaintiff's motion to dismiss, which must therefore be denied.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Counts I, V, and part of Count IX of plaintiff's First Amended Complaint is **DENIED,** and plaintiff's motion to dismiss defendant's Counterclaim XI is **DENIED.**

**IT IS SO ORDERED.**